UNITED STATES of America, Appellee,

v.

Allen Richard GARBETT, Appellant.

No. 87–2201.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 17, 1988.

Decided Feb. 14, 1989.

As Amended on Denial of Rehearing and
Rehearing En Banc April 6, 1989.

Benson B. Weintraub, Benedict P. Kuehne, Sonnett Sale & Kuehne, Miami, Fla., for appellant.

Ronald M. Kayser, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Allen Richard Garbett appeals from a final judgment entered in the District Court[1] for the Southern District of Iowa, upon a jury verdict, finding him guilty of conspiracy with intent to distribute marijuana in violation of 21 U.S.C. § 846. The district court sentenced Garbett to fifteen years imprisonment and $200,000 in fines.

For reversal, Garbett argues that the district court erred (1) in admitting certain out-of-court statements as admissions of co-conspirators, (2) in admitting evidence of crimes that were outside the scope of the conspiracy, (3) in admitting evidence of Garbett's prior marijuana conviction, (4) in admitting statements made by Garbett's counsel during the search of Garbett's residence, and (5) in failing to comply with Fed.R.Crim.P. 32(c)(3)(D) in sentencing. For the reasons discussed below, we affirm the judgment of the district court in part and remand the case to the district court for further proceedings.

On December 22, 1986, a federal grand jury indicted Garbett along with twelve other individuals for conspiracy with intent to distribute marijuana. One of the co-conspirators, Joe Dee Couch, was also charged with continuing criminal enterprise. Couch pleaded guilty on May 8, 1987, to the charge of continuing criminal enterprise and agreed to testify against Garbett who was tried separately.

Couch testified that he began selling marijuana in Iowa in 1981. In 1982, he and several other individuals, including Joseph Raymond Schaffer, attempted to pool their resources in order to buy a larger quantity of marijuana for a better price. This plan went awry when the group was robbed on the way to Florida.

Early in 1983, Schaffer offered to let Couch deal directly with the Miami source —Garbett. Schaffer introduced Couch to Garbett and his wife, Starr Garbett, and they agreed that Couch would buy marijuana directly from Garbett. Couch agreed to pay Schaffer $10 per pound as a finder's fee.

Couch testified that after he began dealing directly with Garbett, he would contact Garbett to find out if drugs were available by dialing Garbett's beeper. If marijuana were available for purchase, Couch would drive to Florida, and, upon his arrival, call a second beeper. Unnamed telephone contacts would tell him where to drop off the car which would be returned to him filled with marijuana. At one point in 1983 Garbett took Couch to a remote location where there were two large sea/land trailers containing marijuana. During the course of the conspiracy, Couch participated in obtaining from Garbett seventeen loads of marijuana, averaging 300 pounds per trip.

Schaffer and Garbett were arrested on January 30, 1983, and charged with possession of marijuana in violation of Florida law. Garbett pled guilty to this offense and was sentenced to eighteen months imprisonment.

On May 16, 1984, Starr Garbett placed an emergency call to the Metro–Dade Police Department complaining that burglars were inside her house at 6100 S.W. 88th Street, Miami, Florida. Starr led the officers on a room-by-room search of the house. The officers observed in plain view marijuana, narcotics paraphernalia, and an open ledger book. The police officers called the Metro–Dade Narcotics squad

1. The Honorable William C. Stuart, Senior United States District Judge for the Southern District of Iowa.

which searched the house after obtaining a search warrant.

As a result of the search the narcotics squad seized several pounds of marijuana; numerous documents containing Garbett's name; a ledger containing accounts of narcotics transactions containing the initials "J.C."; a safe containing $108,000 cash; numerous documents referring to the house next door at 6140 S.W. 88th Street; records referring to Karlo Corporation, Garbett, and Garbett Investments; and two notes written by Couch. The narcotics squad obtained another search warrant for the house next door and seized a large scale, more narcotics paraphernalia, a money counting machine, and wrappers consistent with marijuana trafficking.

Eventually a review of the seized documents led to the arrest of Craig Brodka. Brodka testified at Garbett's trial that a person named "Sal" and later a person named "Al" had used his sea/land trailer containers to store marijuana in late 1983. However, he was unable to identify Garbett as the "Al" with whom he had dealt.

As a result of business cards seized during the May 16, 1984, search, the police began surveillance of Fletcher's Garage, an establishment managed by Leon Cholakis, Garbett's brother-in-law. At one point the police observed Couch in his Iowa vehicle at the garage.

Law enforcement officials searched and seized Couch's Adel, Iowa, residence on November 28, 1984. At that time, officials seized a note which contained Garbett's beeper number from Couch's vehicle. Couch and his wife fled from Iowa after the search and moved to South Miami in March 1985. Couch began driving loads of marijuana for Garbett but quit working for Garbett in late 1985 when Garbett owed him $12,000.

*Admission of Co-conspirator's Statements*

Garbett argues that the district court erred in admitting out-of-court statements of Schaffer and certain unnamed telephone contacts, through Couch's testimony, because the government lacked sufficient evidence to establish the necessary background for admission. Garbett argues that there was insufficient evidence to connect the unnamed telephone contacts and Schaffer to the same conspiracy of which he himself was a member. We disagree.

Fed.R.Evid. 801(d)(2)(E) provides:

A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

Before an out-of-court statement may be admitted pursuant to this rule, the party offering the evidence must establish by a preponderance of the evidence that (1) a conspiracy existed, (2) both the declarant and the non-offering party were members of the conspiracy, and (3) the statement was made in the course of and in furtherance of the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987). It is generally agreed that "an otherwise inadmissible hearsay statement cannot provide the sole evidentiary support for its own admissibility." *Id.* 107 S.Ct. at 2783 (Stevens, J., concurring).

The November 28, 1984, search of Couch's automobile revealed a scrap of paper with Garbett's beeper number on it. In addition, telephone records revealed numerous calls from Couch's residence to Garbett's businesses and residences. The district court had this independent evidence of conspiracy to rely upon when it decided that the unnamed telephone contacts were co-conspirators and that their statements were made during the course of and in furtherance of the conspiracy.

The district court also had independent evidence to link Schaffer to the conspiracy. Couch testified that Schaffer introduced Couch to Garbett and that Schaffer continued to receive a $10 per pound finder's fee after Couch began dealing directly with Garbett. We therefore hold that the district court properly admitted the statements of Schaffer and the unnamed telephone contacts as admissions of co-conspirators pursuant to Fed.R.Evid. 801(d)(2)(E).

*Evidence of Other Crimes*

Garbett argues that the district court erroneously admitted evidence of other crimes outside the conspiracy in five separate instances: (1) Couch's arrangements in 1985 with "Leon" to deliver marijuana for a $5,000 fee, (2) a 1985 delivery of 250 pounds of marijuana, (3) two deliveries of marijuana to Iowa from Kansas City and St. Louis, (4) Couch's 1982 investment of $100,000 with Dale Jones and Joe Schaffer to buy marijuana, and (5) Brodka's rental of his land/sea trailers for marijuana storage to "Sal" in 1983. Garbett argues that he was not directly involved in these acts and that therefore this evidence should have been excluded. We disagree.

The existence of multiple groups of people does not preclude the possibility of there being one overall conspiracy. *United States v. Snider,* 720 F.2d 985, 988 (8th Cir.1983), *cert. denied,* 465 U.S. 1107, 104 S.Ct. 1613, 80 L.Ed.2d 142 (1984). If one overall agreement binds the participants, then one conspiracy exists notwithstanding a change in lower level personnel. *Id.* In the instant case the government was able to show sufficient links between these individuals and incidents and the overall conspiracy to justify admission of the contested evidence. We therefore hold that the district court properly admitted the evidence because these acts were part of the charged conspiracy.

*Admission of Prior Conviction*

Garbett argues that the district court erred in admitting evidence of his 1983 Florida marijuana conviction to prove identity under Fed.R.Evid. 404(b). Garbett argues that the credibility of Couch—not the identity of the supplier—was the real issue in the case. The government argues that identity was made an issue when Garbett moved for a judgment of acquittal based on the argument that no credible evidence connected him to the residence at 6100 S.W. 88th Street.

Fed.R.Evid. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The general rule is that evidence of other crimes is not admissible to prove character. Such evidence can only be introduced to prove identity when the former crime bears some peculiar or striking similarity to the crime with which the defendant is charged.

The typical context [in admitting evidence as proof of identity] is that defendant Jones is charged with crime X, and the prosecution offers evidence of crimes Y and Z, which Jones concedes committing. The prosecution then asks the trier of fact to infer that since crime X is so *peculiarly similar* to crimes Y and Z, it must have been Jones who committed crime X.

*Carter v. Hewitt,* 617 F.2d 961, 968 (3d Cir.1980) (emphasis added).

There is no such "peculiar similarity" between the 1983 possession of marijuana violation and the charged conspiracy to distribute marijuana. That both acts involved marijuana is not a "peculiar similarity" warranting the admission of evidence of the prior conviction. Therefore, evidence of the prior conviction would only be relevant to prove Garbett's character—a use forbidden by the rule. The district court erred in admitting evidence of Garbett's 1983 Florida marijuana conviction. In view of the overwhelming evidence linking Garbett to this conspiracy, however, we hold that the erroneous admission of Garbett's prior conviction constituted harmless error.

*Admission of Out–of–Court Statements of Defense Counsel*

Garbett argues that he was denied the right to conflict-free counsel because the district court admitted into evidence a statement made by defense counsel to the police during the May 16, 1984, search of the residence at 6100 S.W. 88th Street. Sgt. Gary Smith testified that Harvey Robbins, who had arrived at the residence during the search and announced that he was the attorney for the Garbetts, stated that "Al wouldn't mind" if the officers used the stereo system. Garbett argues that the

statement was prejudicial hearsay and therefore not admissible.

The government argues that the statement was properly admitted as non-hearsay under Fed.R.Evid.Rule 801(d)(2)(D) which provides that a statement is not hearsay if it is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."

Ample evidence proved that Robbins was in fact employed by Garbett and that Robbins was at the scene of the search acting as Garbett's counsel. The statement was made during the existence of the agency relationship. However, it is hard to conceive that this particular statement was made within the scope of Robbins' employment. Even assuming for purposes of analysis that Robbins' statement was not admissible as the admission of an agent, we review only for plain error because no objection was made at trial.

The only apparent probative value of Robbins' statement was to link Garbett to the residence at 6100 S.W. 88th Street. Because there was considerable evidence in addition to this statement linking Garbett to the residence, Robbins' statement was at most merely cumulative evidence of ownership. We find no plain error.

*Sentencing Hearing*

■ Garbett argues that the district court erred in failing to resolve certain disputed issues of fact that he raised at the sentencing hearing. Fed.R.Crim.P. 32(c)(3)(D) provides:

> If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report

thereafter made available to the Bureau of Prisons.

Specifically, Garbett argues that his counsel informed the district court that the presentence investigation report contained several errors that needed to be corrected. The district court, however, proceeded with sentencing without making the required findings of fact or determination that such findings were unnecessary.

The government argues that the district court implicitly ruled against Garbett's objections because the district court found no reason not to impose sentence.

Fed.R.Crim.P. 32(c)(3)(D) requires a district court to do more than implicitly rule against a defendant. It establishes a mandatory procedure for resolving factual disputes at the sentencing phase of a trial. Such a procedure is necessary because of the great reliance placed on presentence investigation reports by courts and the Bureau of Prisons and the Parole Commission. *See Poor Thunder v. United States*, 810 F.2d 817, 824 (8th Cir.1987).

Because the district court did not follow the procedure required by Fed.R.Crim.P. 32(c)(3)(D), we remand this case to the district court for further proceedings. On remand, the district court should make the necessary findings as to each allegation or a determination that no such finding is necessary pursuant to Fed.R.Crim.P. 32(c)(3)(D) and append a written record of the findings or determinations to any copy of the presentence investigation report made available to the Bureau of Prisons. Upon the district court entering its findings on any factual dispute, the defendant should be resentenced.

Accordingly, we affirm the judgment of the district court on the merits but vacate the judgment of sentence; after proper findings are made as required by this opinion pursuant to Fed.R.Crim.P. 32(c)(3)(D), the defendant should be resentenced.

FLOYD R. GIBSON, Senior Circuit Judge, concurring in part and dissenting in part.

I concur in the portions of the majority opinion that affirm the judgment of the district court. However, I respectfully dis-

sent from the majority's decision to remand this case "for further proceedings" due to the district court's failure to follow the procedure required by Fed.R.Crim.P. 32(c)(3)(D). I would remand for a more limited purpose.

I believe that further proceedings are unnecessary. Garbett's substantial rights were not violated by the district court's failure to make factual findings or state that such findings were unnecessary. I am convinced that the particular facts that Garbett claims were inaccurately stated in the presentence investigation report did not affect his sentence and were not probative of any issue affecting the sentencing. The district court's failure to follow Rule 32(c)(3)(D) is a harmless error in this case and remanding for further proceedings requires the district court to perform a futile function.

I would remand this case only for the limited purpose of requiring the district court to comply with the requirement of Rule 32(c)(3)(D) that a transcript of the sentencing proceedings be attached to any copy of the presentence investigation report made available to prison authorities.