UNITED STATES of America, Appellee,

v.

James MILLS, doing business as Great American Financial Corp., Inc., Appellant.

No. 92–2041.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1992.

Decided March 8, 1993.

Lee Lawless, St. Louis, MO, argued (James C. Delworth, on the brief), for appellant.

Raymond William Gruender, St. Louis, MO (Stephen B. Higgins and Raymond W. Gruender, on the brief), for appellee.

Before FAGG, BEAM, and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

A jury convicted James F. Mills on six counts of wire fraud in violation of 18 U.S.C. § 1343. The district court[1] sentenced him to an 80–month term of imprisonment on each count of conviction to be served concurrently. Mills appeals and raises two trial issues and three sentencing issues. We affirm.

I. Background

Mills, doing business as Great American Financial Corporation (GAFC), devised a scheme to seek out prospective borrowers from around the country who needed loans to finance multimillion-dollar commercial and real estate projects. After Mills contacted a potential borrower and expressed an interest in the borrower's project, he would send the borrower a "proposal to fund" letter. By sending these letters, Mills intended to convince the prospective borrower that GAFC would arrange the necessary financing. One condition of the loan was that the borrower was required to pay a "commitment fee." A commitment fee typically equalled one percent of the loan amount. Mills promised the borrower that he would either arrange the financing or return the commitment fee. Once Mills received the commitment fee, he or one of his agents would travel to the site of the borrower's project and conduct an inspection. Typically Mills charged several thousand dollars for conducting an inspection.

Unbeknownst to the borrowers, however, these site inspections were perfunctory and superficial. Mills never intended to arrange any financing for the borrowers. Instead, his only goal was to prey on desperate borrowers who were unable to attain financing from traditional lending sources.

Mills managed to convince 71 borrowers to hire GAFC over the course of several years. During this time, Mills received over $1,500,000 in commitment fees from these borrowers. When time passed and the borrowers did not receive their financing, however, they complained and demanded a refund. Mills ignored these complaints by fabricating excuses for why the financing had not materialized, falsely promising that the deal was still in progress, and refusing demands for refunds.

Once his fraudulent scheme started to unravel, Mills began to "steal from Peter to pay Paul." He would take some of the commitment fee money that other borrowers had paid to GAFC and send it to the borrowers who threatened legal action. Mills actually repaid approximately $750,-000 in total to some of the borrowers but only in response to threatened legal action. As a result, Mills was able to cover up his fraudulent scheme for several years.

On May 1, 1991, Mills was indicted and charged with six counts of wire fraud in

---

1. The Honorable George F. Gunn, United States District Judge for the Eastern District of Missouri.

violation of 18 U.S.C. § 1343. After a 10–day trial, the jury found Mills guilty of all six counts. On May 1, 1992, the district court sentenced him to an 80–month term of imprisonment on each count to be served concurrently, two years of supervised release, and a $300 special assessment. Mills appeals.

## II. Discussion

### A. *For Cause Jury Strikes*

■ Mills argues that the district court erred in striking for cause two prospective jurors because the district court did not specifically find that these prospective jurors were biased. Mills contends that the strikes "effectively awarded the prosecution two additional peremptory challenges." We disagree.

"The district court has broad discretion in determining whether to strike jurors for cause, and we will reverse only where actual prejudice has been demonstrated." *United States v. Huddleston*, 810 F.2d 751, 753 (8th Cir.1987) (citing *Rogers v. Rulo*, 712 F.2d 363, 367 (8th Cir.1983), *cert. denied*, 464 U.S. 1046, 104 S.Ct. 719, 79 L.Ed.2d 181 (1984)). In this case, the two prospective jurors who were struck for cause demonstrated a predisposition toward disbelieving government witnesses who testify under a grant of immunity and toward discrediting evidence that the government attained through lawful wiretaps. The government intended to introduce these types of evidence during the trial. Moreover, Mills has not demonstrated and, in fact, does not even argue that he suffered actual prejudice as a result of this alleged error. After reviewing the transcript of the colloquy between the prosecutor and the two prospective jurors, we conclude that the district court did not abuse its discretion in striking them for cause.

### B. *Admission of Evidence*

Mills next argues that the district court improperly permitted the government to use certain newspaper articles seized from his business files and certain business records to cross-examine him during the trial. The articles described advance fee or up-front fee loan scams and warned the general public about them. One article had been sent to Mills by a broker who previously worked with him. Mills contends that the articles and the business records were more prejudicial than probative, contained inadmissible hearsay, and constituted improper prior bad acts evidence. "We review a district court's decision to admit evidence under the abuse of discretion standard." *United States v. Saffeels*, 982 F.2d 1199, 1207 (8th Cir.1992) (citing *United States v. Mays*, 822 F.2d 793, 797 (8th Cir.1987)).

■ After reviewing the transcript, we conclude that the district court did not abuse its discretion in permitting the government to use this evidence in cross-examining Mills. First, the evidence was relevant to prove that he intended to defraud the borrowers. Intent is an element of 18 U.S.C. § 1343. Throughout the trial, Mills denied that he had any intent to defraud. He also denied that his operation resembled that of the fraudulent schemes described in the newspaper articles seized from and admittedly kept in his business files. Because of these denials, we conclude that Mills invited the government on cross-examination to attempt to refute or to discredit him on this point. *See United States v. Jacoby*, 955 F.2d 1527, 1540 (11th Cir. 1992) (internal citation omitted). We also conclude that the articles and the business records were direct evidence bearing on the intent element of the crime charged in this case.

■ Second, Federal Rules of Evidence 403 would not exclude the use of this evidence. Rule 403 excludes relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. In this case, we conclude that the use of this evidence did not unfairly prejudice Mills, because it was Mills, while testifying during the trial, who initially read a portion of one of the newspaper articles into evidence. The government, therefore, was properly permitted to use the article to cross-examine Mills.

■ Third, the materials do not constitute inadmissible hearsay. The government did not offer the evidence to prove the truth of the matter asserted in the articles. *See* Fed.R.Evid. 801(c). Therefore, the district court properly permitted the government to use the evidence for the limited purpose of proving that Mills intended to defraud the borrowers.

■ Finally, Mills' argument that the material should have been excluded under Fed.R.Evid. 404(b) is misplaced.[2] Rule 404(b) pertains to other acts committed by the defendant. In this case, the newspaper articles seized from Mills' business files did not describe prior acts committed by Mills. Instead, the articles described advance fee loan scams conducted by other confidence scheme artists around the country. Therefore, Rule 404(b) is by its terms inapplicable in this context.

C. *Sentencing Guideline 2F1.1—Loss Calculation*

Mills contends that the government at the time of sentencing did not prove either by clear and convincing evidence or by a preponderance of the evidence that Mills defrauded 71 victims out of more than $1,500,000. He argues, therefore, that the district court erred in finding that the amount of loss totalled $1,545,350. We disagree.

■ The government must prove the facts relied upon by the district court at the time of sentencing by a preponderance of the evidence. *See United States v. Galloway*, 976 F.2d 414, 428 (8th Cir.1992) (en banc) and *United States v. Wise*, 976 F.2d 393, 400 (8th Cir.1992) (en banc). Additionally, the district court is not required to determine the amount of loss with precision, but rather must make a reasonable estimate of the loss based on the available evidence. *See* U.S.S.G. § 2F1.1, comment. (n. 8) (Nov. 1991) (this estimate may be based on the approximate number of victims and an estimate of the average loss to each victim). After reviewing the record, we conclude that the government proved the losses to the 71 victims by a preponderance of the evidence. We also conclude that the district court did not clearly err in finding that the total amount of loss was $1,545,350. *See United States v. Earles*, 955 F.2d 1175, 1180 (8th Cir.1992) (the calculation of the amount of loss under U.S.S.G. § 2F1.1 is a factual question to be reviewed under the clearly erroneous standard).

■ Mills also contends that the district court incorrectly applied the sentencing guidelines in calculating the amount of loss pursuant to U.S.S.G. § 2F1.1 (Nov. 1991). The district court found the loss to total more than $1,500,000, but less than $2,500,000. This finding translated into a 12–level increase, which when added to a base offense level of six, resulted in an offense level of 18. *See* U.S.S.G. § 2F1.1(b)(1)(M) (Nov. 1991). This loss calculation was based on the total amount of commitment fees paid to Mills by the 71 victims of this fraudulent scheme. Mills contends that because he returned $746,816 to the victims before being criminally charged the district court should have reduced the total loss figure by this amount.[3] Based on this theory, the total loss would amount to more than $500,000, but less than $800,000, which would translate into a 10–level increase in the offense level. *See* U.S.S.G. § 2F1.1(b)(1)(K). Because this issue involves a legal interpretation of the sentencing guidelines and the application of that interpretation to a particular set of facts, we review de novo the district court's calculation of loss pursuant to U.S.S.G.

**2.** In addition, Mills incorrectly states that prior acts committed under Rule 404(b) must be proved by clear and convincing evidence. The now well-established rule in this circuit is that, among other things, the prior acts must be proved by a preponderance of the evidence to be admissible under Rule 404(b). *United States v. Aranda,* 963 F.2d 211, 215 (8th Cir.1992) (citing *United States v. Campbell,* 937 F.2d 404, 406 (8th Cir.1991)). *See also Huddleston v. United*

*States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) ("similar" acts evidence under Rule 404(b) should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act).

**3.** According to Mills, the exact amount of loss would be $798,534.

§ 2F1.1. *United States v. Manuel*, 912 F.2d 204, 206 (8th Cir.1990).

Mills' argument is barred by this court's recent opinion in *United States v. Prendergast*, 979 F.2d 1289 (8th Cir.1992). In *Prendergast*, the defendant was convicted of selling fraudulent promissory notes to the investors named in the indictment totaling $280,000. Because Prendergast repaid approximately $110,000 of this total, he argued at the time of sentencing that the amount of loss should total only $170,000 under U.S.S.G. § 2F1.1. Although the district court agreed with Prendergast's argument, this court reversed and remanded with instructions to recalculate the amount of the loss. "The focus for sentencing purposes under § 2F1.1 should be on the amount of possible loss the defendant attempted to inflict on the victim." *Id.* at 1292 (internal citations omitted). Furthermore, "the amount of loss used to increase the offense level under the fraud guideline 'may be either the amount of loss the defendant intended to inflict or the actual loss resulting from the fraudulent conduct, *whichever is greater.*'" *Id.* (quoting *United States v. Edgar*, 971 F.2d 89, 93 (8th Cir.1992) (citing U.S.S.G. § 2F1.1, comment. (n. 7) (Nov. 1991)).

The evidence in this case reveals that Mills intended to inflict more than $1,500,000 of loss on his victims. He repaid some of the money but only reluctantly in response to threats of legal action. Therefore, we hold that the district court correctly calculated the amount of loss in determining Mills' offense level.[4]

Finally, Mills argues that the Sentencing Commission exceeded its statutory authority in promulgating U.S.S.G. § 1B1.3, the relevant conduct guideline. This argument is barred by *Galloway*, 976 F.2d at 419–22, where we concluded that Congress statutorily granted the Sentencing Commission the authority to adopt a relevant conduct guideline.

### D. *Sentencing Guideline § 3B1.1—Role in the Offense*

■ Mills contends that the district court erred in granting a four-level increase to his offense level for his role as "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." *See* U.S.S.G. § 3B1.1(a) (Nov. 1991). Specifically, he contends that the district court failed to require the government during sentencing to prove by sufficient evidence that Collier and Waggoner were "participants" in this fraudulent scheme. We review a district court's decision to apply § 3B1.1(a) under the clearly erroneous standard. *United States v. Jagim*, 978 F.2d 1032, 1042 (8th Cir.1992).

■ As the basis for the four-level enhancement under U.S.S.G. § 3B1.1, the United States Probation Officer who prepared the presentence report (PSR) alleged that Mills was an organizer or leader of a criminal activity that involved five or more participants that included Mills, Waggoner, Wiegand, Jhala, and Collier. Mills objected to this allegation in the PSR. During the sentencing, Mills argued that there was not sufficient evidence to find that either Waggoner or Collier were "participants" in this fraudulent scheme. When asked at the beginning of the sentencing hearing if any additional exhibits or testimony would be necessary to resolve the defendant's objections to the PSR, the defendant's counsel

---

**4.** Mills contends that the 1991 amendment to U.S.S.G. § 2F1.1, comment. (n. 7), which eliminated the phrase "probable loss" from the calculation of the amount of loss, "drastically narrows the implication of 'intended' loss as a basis for determining an offense level increase." *See* Appellant's Brief at 12. We disagree. Mills' only support for this contention is U.S.S.G.App. C, amend. 393 (Nov. 1992). This amendment, however, does not support Mills' argument. Instead, this amendment reaffirms the fact that the basis for calculating loss pursuant to § 2F1.1 under the 1991 and the 1992 Sentencing Guidelines is either the intended loss or the actual loss, whichever is the greater amount. Because we hold that the district court correctly calculated the amount of intended loss to total more than $1,500,000, Mills' argument has no merit.

said he anticipated none. *See* Sentencing Transcript (Tr.), Vol. 5, at 287. The government offered none and relied on the trial record. After listening to the arguments and reviewing the evidence concerning Waggoner and Collier, the district court found that both Waggoner and Collier participated in this fraudulent scheme and it subsequently overruled Mills' objections to this enhancement. On this basis, we conclude that the district court satisfied Fed. R.Crim.P. 32(c)(3)(D).

If the defendant objects to the facts alleged in the PSR, Rule 32(c)(3)(D) requires the district court either to make a finding as to the controverted facts or to state that the controverted facts will not be taken into account in sentencing, thereby eliminating the necessity to make a finding. In this case, the district court's specific comments concerning its impression of the trial evidence concerning Waggoner and Collier, *see* Tr., Vol. 5, at 299–300, and its rejection of Mills' arguments regarding the four-level enhancement amount to a finding that Mills was an organizer or leader of a criminal activity that involved five or more participants. We note that the sentencing judge presided over Mills' trial, and therefore, the sentencing judge was well aware of the evidence against Mills including the evidence that showed his role in the offense and the roles played by others.

This case is distinguishable from *United States v. Garbett,* 867 F.2d 1132 (8th Cir. 1989). In *Garbett,* the defendant objected to several allegations included in the PSR. *Id.* at 1136. "The district court, however, proceeded with sentencing without making the required findings of fact or [the] determination that such findings were necessary." *Id.* The government argued that the district court made the required findings by implicitly ruling against Garbett's objections to the PSR and by imposing a sentence. *Id.* This court remanded the case for resentencing after holding that Rule 32(c)(3)(D) "requires a district court to do more than implicitly rule against the defendant." *Id.*

In this case, in contrast to *Garbett,* the sentencing judge engaged in a colloquy with counsel for both Mills and the government. Mills' counsel first argued that Waggoner was not a participant in the fraudulent scheme because Waggoner "devoted his time solely to the gas leasing business." Tr., Vol. 5, at 299. After listening to this argument, the sentencing judge disagreed and specifically found that Waggoner was a part of this fraudulent scheme. *Id.* Mills' counsel next argued that there was no evidence that Collier, Mills' secretary, knew about the fraudulent scheme and that Collier's name was mentioned only a couple of times at trial. *Id.* at 300. Counsel for the government stated that "[w]itness after witness said that she made excuses and lied to various people about [Mills'] whereabouts." *Id.* After listening to these arguments, the sentencing judge specifically found that Collier's name came up on almost every transaction during the trial. *Id.* The sentencing judge then explicitly overruled Mills' objections to the enhancement for role in the offense. We conclude that the sentencing judge's explicit statements finding that both Waggoner and Collier participated in the fraudulent scheme and the overruling of Mills' objections to the enhancement satisfies Rule 32(c)(3)(D).

After thoroughly reviewing the evidence, we conclude that there was sufficient evidence to support the four-level increase. Accordingly, we hold that the district court did not clearly err in applying § 3B1.1(a) to increase Mills' offense level.

E. *Sentencing Guideline § 3C1.1—Obstruction of Justice*

 Finally, Mills argues that the district court erred in granting a two-level increase for obstruction of justice pursuant to U.S.S.G. § 3C1.1 (Nov. 1991). Specifically, Mills contends that the government failed to prove that he "willfully" obstructed justice as required by § 3C1.1. We review a district court's factual finding in applying § 3C1.1 under the clearly erroneous standard. *United States v. Flores,* 959

F.2d 83, 87 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 469, 121 L.Ed.2d 376 (1992).

In the PSR, the probation officer recommended the obstruction of justice enhancement on the basis that Mills allegedly submitted forged documents to the court during the trial, *see* Gov't Exhibits 121 and 121A, and that Mills committed perjury while testifying about these documents. *See* PSR at 5. We note that the sentencing judge had previously heard all of the evidence during the trial about the alleged forgery and also about Mills' denial under oath that he had submitted "cooked-up" documents. Mills specifically objected to the allegations in the PSR and to the enhancement. During sentencing, both Mills and the government argued about what the evidence at trial demonstrated concerning the alleged forgery and the alleged perjury. After listening to the arguments concerning the evidence, the sentencing judge explicitly agreed with the argument that the defendant used the documents at trial to try to fool the jury and to obstruct justice. The sentencing judge then specifically overruled Mills' objections and granted the two-level increase to Mills' base offense level. *See* Tr., Vol. 5, at 310–11.

■■■ We conclude that the sentencing judge's finding that Mills obstructed justice by trying "to fool the jury" with these documents and the overruling of Mills' objection to the enhancement satisfies Fed. R.Crim.P. 32(c)(3)(D).

We also conclude that this case is distinguishable from *United States v. Holt,* 969 F.2d 685 (8th Cir.1992). In *Holt,* the probation officer who prepared the PSR recommended the two-level enhancement for obstruction of justice because Holt allegedly threatened to harm a government witness and because he allegedly committed perjury at trial. *Id.* at 688. Holt objected to the allegations in the PSR. *Id.* "The District Court—without requiring the government to produce evidence at the sentencing hearing on the issue, without conducting an evidentiary hearing, and without making a specific finding on the issue—simply adopted the allegations contained in the PSR as its finding of fact, and increased Holt's offense level by two levels for obstruction of justice." *Id.* This court vacated the enhancement and remanded for an evidentiary hearing because the district court's exclusive reliance on the PSR was improper. *Id.* The *Holt* court reemphasized the fact that the PSR is not evidence and that "a mere acceptance by the court of the PSR is not a legally sufficient method of making a finding" on a controverted factual issue. *Id.*

■■■ In this case, in contrast to *Holt,* the district court did not exclusively rely on the allegations contained in the PSR. Instead, the district court listened to the arguments made by both parties which were based upon the exhibits and the testimony already before the court on this enhancement issue. On the basis of the arguments made during sentencing and on the district court's familiarity with what had occurred at the trial, the district court found that *Mills willfully obstructed justice.*

In summary, we conclude that the record demonstrates that the defendant used forged documents at trial and testified falsely about them. The record fully supports the additional two-point increase to Mills' offense level on the basis of obstruction of justice, and therefore, the district court did not clearly err in assessing it.

## III. Conclusion

Accordingly, we affirm the district court.