THOMAS H. AND HELEN K. FOULDS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Foulds v. Commissioner
Docket No. 37942-85.
United States Tax Court
T.C. Memo 1994-489; 1994 Tax Ct. Memo LEXIS 501; 68 T.C.M. (CCH) 858; October 5, 1994, Filed *501 Decision will be entered pursuant to Rule 155. Thomas H. Foulds, pro se. For respondent: Michelle K. Loesch and Robert F. Geraghty. FAY
FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: By statutory notice of deficiency, dated July 11, 1985, respondent determined deficiencies in and additions to petitioners' Federal income taxes in the following amounts: Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6653(a)
6653(a)(1)
6653(a)(2)
1980
$ 29,953
$ 3,612.10
--  --
1981
68,832
--  $ 4,398.85
[1]
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. The deficiencies in this case resulted from the disallowance of losses attributable to alleged straddle transactions of forward contracts for Government-backed financial securities with First Western Government Securities, Inc. (First Western). The First Western losses were the subject of this Court's opinion in Freytag v. Commissioner, 89 T.C. 849 (1987), affd. *502 904 F.2d 1011 (5th Cir. 1990), affd. on other grounds 501 U.S. 868 (1991). Among the Court's findings in Freytag was that the "transactions between First Western and its customers were illusory and fictitious and not bona fide transactions." Id. at 875. This Court alternatively held that, even if the transactions had substance, they "were entered into primarily, if not solely, for tax avoidance purposes." Id. at 876. In concluding that the transactions were not bona fide, the Court examined various aspects of the First Western program, including the risk of profit and loss, the hedging operation, the margins required and fees charged, the pricing of the forward contracts, and the manner in which the transactions were closed. In all these areas we found that the First Western operations were deficient and not conducted as they should have been if bona fide financial transactions were being conducted. With respect to the losses, this Court noted: Petitioners' portfolios were constructed so as to achieve their desired tax losses. In this regard, the most important *503 required data supplied by petitioners were their requested tax losses. Indeed, the program could not be implemented without the tax information. Thus, in analyzing the program from a profit standpoint, from the first, the tax tail wagged an economic dog. * * * [Id. at 878.]
We also pointed out that there were other "gremlins" in First Western's world that dispelled the notion that these transactions were bottomed in financial reality; for example, the reversing of transactions months later, confirmations' being months late, transactions being made with no documentation, and the list goes on. Id. at 882. In the case currently before the Court, petitioners stipulate that respondent's disallowance of losses attributable to First Western transactions is correct. After concessions by the parties, [1] the sole issue for decision is whether petitioners are liable for the additions to tax for negligence or intentional disregard of the rules or regulations pursuant to section 6653(a), and 6653(a)(1) and (2) for the 1980 and 1981 taxable years, respectively. *504 FINDINGS OF FACT The parties filed a stipulation of partial settlement, a stipulation of settlement, a stipulation of facts for trial, with joint exhibits, and a supplemental stipulation of facts for trial, with joint exhibits, on December 3, 1987, August 27, 1992, October 4, 1993, and October 4, 1993, respectively. These facts are so found and, by this reference, are incorporated herein. Additionally, the findings of fact as set forth in Freytag v. Commissioner, supra, are incorporated by this reference as though set forth in full herein. Petitioners resided in Seattle, Washington, at the time they filed their petition. Thomas H. Foulds (petitioner) and Helen K. Foulds (Mrs. Foulds) were married during the years at issue, but were divorced subsequent to the commencement of these proceedings. Petitioner appeared pro se during the trial in this matter. Petitioner is a highly educated person, having received a B.A. in political science from Washburn University in the late 1940s, and graduating from Washburn School of Law in 1951. Petitioner, after his admission to the bar, has since practiced law as an active member of the Washington State Bar and has periodically been *505 a member of the American Bar Association, the American Trial Lawyer's Association, and the Washington State Trial Lawyer's Association. Furthermore, petitioner has subscribed through the years to financial periodicals such as Fortune Magazine, The Wall Street Journal, Barrons, and various investment news letters and has invested in such things as silver and palladium futures. During the years at issue, petitioner was a named partner in the law firm of Foulds, Felker, Burns & Johnson. Petitioner was also a general partner in a general partnership named Felker & Foulds (the partnership), which was the entity by which petitioner became involved with First Western. Petitioner was referred by one of his partners, Thomas Felker, to David Kobsev (Kobsev), who was a "finder" for the First Western investment. [2] Petitioner followed up on the referral, subsequently contacting and discussing First Western with Kobsev. On November 26, 1980, and August 20, 1981, petitioner issued personal checks for $ 8,666.58 and $ 12,150, respectively, to the partnership's First Western account, both of which were subsequently cashed by First Western. *506 Prior to petitioner's initial investment in First Western, petitioner claims he consulted with a certified public accountant, John Walsh (Walsh), who was a partner at the accounting firm, Price Waterhouse. Petitioner did not produce, at trial, any documents, if any, received from Walsh. Before making the investment in First Western, petitioner spoke with Walsh on only one occasion with respect to the First Western venture. Petitioner never possessed any written opinion by Walsh which discussed any aspect of the First Western transactions, nor did petitioner ever review any written opinion of Walsh regarding any aspect of the First Western program. Furthermore, petitioner did not rely upon any legal opinion in deciding whether or not to invest in First Western. Petitioners' First Western investments generated alleged tax losses, which were claimed on their returns, of $ 63,030 and $ 102,618 for the 1980 and 1981 taxable years, respectively. [3] Petitioners did not rely upon any legal opinion in deciding whether to claim the above-mentioned alleged tax losses from First Western on their 1980 and 1981 tax returns. At trial, Walsh, the professional adviser on whom petitioner claims *507 he relied, could not remember whether he gave petitioner advice concerning the loss deductions. Immediately prior to and during the years here at issue, there was extensive continuing press coverage of questionable tax shelter plans. [4]
OPINION Respondent determined additions to tax for negligence under section 6653(a), and 6653(a)(1) and (2) *508 for 1980 and 1981, respectively. Negligence is a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under similar circumstances. Freytag v. Commissioner, 89 T.C. at 887 (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. on this issue 43 T.C. 168 (1964)); see also Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982). Petitioner has the burden of establishing that his actions were not negligent. Rule 142(a); see Freytag v. Commissioner, 904 F.2d at 1017. Petitioners argue that the negligence addition to tax is unwarranted. The essence of their argument is that they relied on a professional tax adviser. With regard to petitioners' reliance on an expert, such reliance, standing alone, will not insulate a taxpayer from the addition to tax for negligence. It must be shown that the expert had the expertise and knowledge of the pertinent facts to render such an opinion on the subject matter. Freytag v. Commissioner, 89 T.C. at 888. *509 It must first be established, however, that such reliance was reasonable under the circumstances and in good faith. Betson v. Commissioner, 802 F.2d 365, 372 (9th Cir. 1986), affg. in part and revg. in part T.C. Memo. 1984-264. Reliance on a professional's opinion is not a safe harbor if a reasonable person would know that the opinion does not reflect a prudent professional's serious efforts. United States v. Campbell, 704 F.Supp. 715, 730 (N.D. Tex. 1988), affd. as modified 987 F.2d 1317 (5th Cir. 1990). After careful review of the entire record, we sustain respondent's determination of the negligence addition to tax for both of the years at issue. [5]
*510 The Court is, first of all, not convinced that petitioners established Walsh to be an expert with sufficient knowledge and expertise with respect to the First Western venture to insulate petitioners from the negligence addition to tax. Assuming, arguendo, that Walsh was an expert in these matters, the record does not establish to our satisfaction that petitioners in fact "relied" on any bona fide advice from Walsh. Even assuming the rest to be true, we find, as a threshold matter, taken from the record as a whole, that petitioners' reliance, if they actually relied on Walsh at all, was unreasonable, given petitioner's background, education, and the nature of the deductions involved herein and was not in good faith. Petitioner knew or should have known that the First Western scheme was too good to be true. See McCrary v. Commissioner, 92 T.C. 827, 850 (1989). We have considered petitioners' other arguments and find that they are likewise without merit. To reflect the foregoing, Decision will be entered pursuant to Rule 155.
Footnotes
1. Fifty percent of the interest payable on the deficiency.↩
1. In her notice of deficiency respondent disallowed a $ 31,003 loss with respect to petitioners' interest in a partnership known as Storage Technology Partners II for the 1981 taxable year. In the stipulation of partial settlement, filed December 3, 1987, the parties agree that petitioners are entitled to this loss.↩
2. The use of the term "investment" in conjunction with First Western in no way is meant to lend an air of legitimacy to the First Western venture.↩
3. The ratio of reported losses to invested capital was 7.27:1 and 8.45:1 for 1980 and 1981, respectively.↩
4. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. on other grounds 501 U.S. 868 (1991), referring to Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714↩ (1982), and references cited therein.
5. Our holding in this matter is consistent with numerous cases which have dealt with these identical issues. See, e.g., Gould v. Commissioner, T.C. Memo. 1994-236; Chamberlain v. Commissioner, T.C. Memo. 1994-228; Durrett v. Commissioner, T.C. Memo. 1994-179↩, to name but a few.