UNITED STATES of America, Appellee,

v.

Michael Charles BEATTY, Appellant.

No. 92–2920.

United States Court of Appeals,
Eighth Circuit.

Submitted March 16, 1993.

Decided Nov. 10, 1993.

Rehearing Denied Dec. 17, 1993.

Kevin J. Short of Minneapolis, MN, argued, for appellant.

Douglas R. Peterson, Minneapolis, MN, argued (Thomas B. Heffelfinger, Elizabeth L. De La Vega and Laura Engleson, on the brief), for appellee.

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

HANSEN, Circuit Judge.

Michael Charles Beatty pled guilty to one count of conspiracy to commit mail fraud in violation of 18 U.S.C. §§ 371 and 1341 and to one count of mail fraud in violation of 18 U.S.C. § 1341. The district court departed upward from the otherwise applicable Sentencing Guidelines range of 27 to 33 months and sentenced Beatty to a 41–month term of imprisonment. Beatty appeals and raises numerous issues challenging his sentence. We affirm.

## I.

Beatty first contends that he did not receive adequate notice of the possibility that the district court might depart upward and, therefore, the district court abused its discretion in denying his motion for a continuance to submit a written brief regarding the departure issue. We disagree.

■■■ Beatty received sufficient notice about the departure issue. The presentence investigation report (PSR) included a section entitled "Factors That May Warrant Departure," which listed the specific factors that could justify an upward departure under U.S.S.G. § 2F1.1 and specifically informed Beatty that "upward departure might be warranted." (*See* PSR at 16–17.) We conclude that the PSR provided sufficient information to Beatty about the possibility that the district court might depart upward. *See United States v. Andrews*, 948 F.2d 448, 449 (8th Cir.1991) (citing *Burns v. United States*, —— U.S. ——, ——, 111 S.Ct. 2182, 2187, 115 L.Ed.2d 123 (1991) (defendant received sufficient notice when either the PSR indicates that certain facts could justify an upward departure or when the government requests a departure)). In addition, Beatty's counsel acknowledged that he was aware of the district court's "inherent power" to depart upward and that he had thought about the departure issue and was prepared to orally address it during the sentencing hearing. (*See* Sent.Tr. at 4.) Consequently, the district court did not abuse its discretion in denying Beatty's motion for continuance. *See United States v. Voss*, 787 F.2d 393, 401–02 (8th Cir.) (standard of review for denial of a motion to continue is abuse of discretion), *cert. denied*, 479 U.S. 888, 107 S.Ct. 286, 93 L.Ed.2d 261 (1986).

## II.

■■ Beatty next contends that the district court misapplied the Sentencing Guidelines by relying on the specific offense characteristic, "more than minimal planning," as the basis for both a two level upward adjustment pursuant to U.S.S.G. § 2F1.1(b)(2)(A) and as one of its stated reasons for upward departure pursuant to U.S.S.G. § 5K2.0, p.s.

Beatty does not contend that "more than minimal planning" was not present in his offense conduct. He merely contends that the district court engaged in an improper form of "double-counting" when it used the same factor to increase his punishment under two separate and different provisions of the Sentencing Guidelines. We disagree.

Double-counting is permitted in some circumstances. *Compare United States v. Burnett*, 952 F.2d 187, 188–90 (8th Cir.1991) (holding that district court may consider defendant's underlying conviction under both § 2J1.6(a) and § 4A1.1(a) & (d) when sentencing him for failure to appear to serve his sentence), *and United States v. Thomas*, 930 F.2d 12, 13–14 (8th Cir.1991) (holding that district court may consider defendant's underlying conviction under both § 2P1.1(a)(1) and § 4A1.1(d) & (e) when sentencing him for escape), *with United States v. Werlinger*, 894 F.2d 1015, 1017–18 (8th Cir.1990) (holding that defendant's concealment of crime does not warrant adjustment for obstruction of justice because Commission provided for concealment in base offense level). The district court, however, did not actually engage in "double-counting." A two-level increase in the offense level is required if any one of four specific offense characteristics are present. U.S.S.G. § 2F1.1(b)(2) (1987). If "several of the enumerated factors" are present, then "upward departure might be warranted." U.S.S.G. § 2F1.1 comment. (n. 1) (1987). Beatty's offense level was adjusted upward two levels because of the first factor enumerated in § 2F1.1(b)(2), i.e., more than minimal planning. Beatty was then subjected to the possibility of an upward departure if additional enumerated factors were present. In Beatty's case, the district court found that three of the four "enumerated factors" were present, i.e., Beatty had engaged in "more than minimal planning," he had defrauded more than one victim (the court found Beatty had defrauded 57 investors), and he had violated an administrative decree issued by the Minnesota Department of Commerce. Relying on the presence of the additional factors the district court departed upward. Thus, no single factor was directly responsible for two discrete increases in Beatty's sentence. We thus conclude that the district court did not

err when it both adjusted Beatty's offense level and departed upward.

## III.

■ Beatty contends that the following information contained in the PSR violated Federal Rule of Criminal Procedure 32(c):

On February 17, 1988, Van Slooten was murdered. The defendant was identified as a main suspect but was never arrested nor formally charged.

(PSR at 6.) While he maintained his innocence of the murder at sentencing, Beatty did not object to the accuracy of the report that he was a main suspect. In fact, in his written objections to the presentence report, he admitted that he had been "the target of a first degree murder investigation unprecedented in its intensity and scope" for more than four and one-half years. Beatty contended that the information about the murder was unnecessary because the sentencing judge already knew all about it from presiding over the wrongful death action, and that it was irrelevant because it occurred after the period of time covered by the Indictment and the plea agreement. Beatty also expressed concern that the Bureau of Prisons would use the information to his prejudice while confined.

The district court overruled Beatty's objection to this information and stated:

The information regarding Van Slooten's death, and the circumstances arising from his death, is information which the court needs in order to understands [sic] all of the circumstances stemming from the offense. Any potential harm, from the inclusion of such information, is mitigated by the inclusion of fact that [Beatty] was never arrested or charged with the murder of [his co-conspirator] Van Slooten.

(Sent.Tr. at 19.)

We conclude that the district court did not violate Rule 32 by refusing to strike the reference in the PSR concerning Van Slooten's death. The rule relied upon does not require that the objected-to material be stricken. *United States v. Johnson,* 767 F.2d 1259, 1276 (8th Cir.1985); *see also United States v. Robertson,* 901 F.2d 733, 735 (9th

Cir.), *cert. denied,* 498 U.S. 962, 111 S.Ct. 395, 112 L.Ed.2d 405 (1990). The PSR specifically indicates that Beatty was never arrested or charged in Van Slooten's homicide. The information, therefore, was fairly presented and did not unfairly prejudice Beatty.

■ Another Ninth Circuit case addresses Beatty's concern that the objected-to material may be used to his disadvantage by prison officials.

Neither due process nor Rule 32 requires a district court judge to be an editor as well as an arbiter of justice. Any concerns a defendant might have about prison officials relying on unfounded, detrimental information in his presentence investigation report should be met by a district court's compliance with Rule 32(c)(3)(D).

*United States v. Turner,* 898 F.2d 705, 710 (9th Cir.), *cert. denied,* 495 U.S. 962, 110 S.Ct. 2574, 109 L.Ed.2d 756 (1990). We find no violation of Rule 32 in this context.

## IV.

Beatty next contends that there was insufficient information to support the allegations contained in the PSR regarding the issues of acceptance of responsibility, U.S.S.G. § 3E1.1, and of role in the offense, U.S.S.G. § 3B1.1, and that the district court violated Federal Rule of Criminal Procedure 32(c)(3)(D).

With regard to acceptance of responsibility, Beatty contends that the PSR contained information alleging that he was "very uncooperative during the course of the Federal Fraud Investigation." He argues that even though the district court granted him a two-level downward adjustment for acceptance of responsibility, the unsubstantiated allegation might have affected the district court's decision to depart upward, and therefore, he is entitled to be resentenced.

As we have noted, the district court specifically enumerated three factors—more than minimal planning, more than one victim, and violation of an administrative decree—as the basis for departing upward. (*See* Sent.Tr. at 28–29.) According to the district court, therefore, the extent of Beatty's cooperation (or lack thereof) was not relevant to its deci-

sion to depart upward. Furthermore, Beatty misquotes the PSR. The PSR states, "Although it has been reported that the defendant was very uncooperative during the investigation of the instant offense it appears he has recently accepted responsibility for his criminal behavior and a two offense level reduction is warranted." (*See* PSR at 11.) We conclude that Beatty did not suffer any unfair prejudice.

With respect to role in the offense, Beatty and the government agreed that he "was a manager or supervisor in a criminal activity involving less than five participants which was not otherwise extensive," thereby warranting a two-level upward adjustment under U.S.S.G. § 3B1.1(c). (*See* Designated Clerk's R. at 42 (Plea Agreement).) The probation office, however, in paragraph 30 of the PSR, recommended a four-level upward adjustment after concluding that Beatty was an organizer and leader of a criminal activity that was extensive. (*See* PSR at 11.) Beatty specifically objected to the conclusion contained in paragraph 30 assessing a four-level upward adjustment for role in the offense and also to the factual allegations contained in paragraphs 6, 11, 12, and 18 of the PSR. (*See* Designated Clerk's R. at 60–64 (Def.'s Objections to PSR).) Beatty states that he objected to these specific paragraphs in the PSR in order to make it clear that "there was a substantial difference in the roles that Mr. Van Slooten and Mr. Beatty played at the company." (*Id.* at 64.)

■ Rule 32 requires a district court to make specific findings as to each controverted material fact in the PSR or to determine that no such finding is necessary because the controverted fact will not be taken into account in sentencing in order to ensure "meaningful appellate review and the fairness of the sentencing process." *United States v. Coleman,* 990 F.2d 419, 421–22 (8th Cir.1993) (citing *United States v. Candie,* 974 F.2d 61, 65 (8th Cir.1992)).

■ In this case, the district court adopted the factual statements contained in the PSR that were unchallenged by either party. (*See* Sent.Tr. at 16.) Under our cases, a district court is clearly permitted to accept as true all factual allegations contained in the PSR that are not specifically objected to by the parties. *United States v. Montanye,* 996 F.2d 190, 192–93 (8th Cir. 1993) (en banc) (citing cases). In addition, the district court specifically addressed and rejected each of Beatty's objections to the PSR. It did so, however, without taking any further evidence. The court specifically found that the information was accurately written in paragraph 11, (*see* Sent.Tr. at 16–17), paragraph 12, (*see* Sent.Tr. at 17), and paragraph 18, (*see* Sent.Tr. at 18), of the PSR. In making the determinations about those objected-to paragraphs, the court relied on additional facts (principally hearsay-based) asserted by the probation officer in the second addendum to the PSR, which the probation officer prepared after the defendant had lodged his objections to the PSR. We readily conclude that the district court's heavy reliance on the allegations of fact contained in the objected-to paragraphs of the PSR and its addendum for the true version of the facts when they are in dispute violated Rule 32. As we have repeatedly stressed, the "presentence report is not evidence and is not a legally sufficient basis for making findings on contested issues of material fact." *United States v. Streeter,* 907 F.2d 781, 791–92 (8th Cir.1990); *see also United States v. Ransom,* 990 F.2d 1011, 1014 (8th Cir.1993); *United States v. Wise,* 976 F.2d 393, 404 (8th Cir.1992) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 1592, 123 L.Ed.2d 157 (1993). Most recently, in *United States v. Hammer,* 3 F.3d 266, 271 (8th Cir.1993), we again emphatically made the same point. At the risk of being redundant, we make it once more:

A court may rely solely upon a presentence report for findings relevant to sentencing *only* if the facts in the presentence report are not disputed by the defendant.

*United States v. Fortier,* 911 F.2d 100, 103 (8th Cir.1990) (emphasis added).

■ Nevertheless, we hold that the district court's failure to comply with Rule 32(c)(3)(D)'s requirement and with our cases is harmless error. *Hammer,* 3 F.3d at 270 (harmless error analysis applied to erroneous use of PSR as evidence at sentencing); *see also United States v. Montoya,* 891 F.2d

1273, 1279 (7th Cir.1989) (failure to rule on controverted matters in PSR subject to harmless error analysis). Notwithstanding the specific factual allegations contained in paragraphs 6, 11, 12, and 18 of the PSR, which are the paragraphs that Beatty objected to in the PSR, in our judgment there were sufficient uncontroverted facts contained in the remaining, unchallenged factual paragraphs in the PSR and in the plea agreement to support the four-level upward adjustment for role in the offense imposed by the district court. Consequently, the district court's failure to comply with Rule 32(c)(3)(D) in this case was harmless error.

Having considered all of the defendant's arguments about the court's application of the Sentencing Guidelines, we conclude that the district court's pre-departure determinations that the defendant's offense level was 18, with a criminal history category of I, yielding a sentencing range of 27–33 months of imprisonment are correct.

## V.

■■■ Beatty argues that the government violated the plea agreement, which stated that the government agreed "not to make a motion for upward departure." (*See* Designated Clerk's R. at 43, ¶ 9.)

At sentencing, the district court informed the parties early on, even before it had determined the defendant's objections to the PSR, that it intended to depart upward from the otherwise applicable Guidelines range and sought counsel's argument about that issue. (*See* Sent.Tr. at 3.) After the district court denied Beatty's request for a continuance to submit a written response regarding the departure issue, Beatty's counsel argued against departing upward. (*Id.* at 6–13.) The district court then granted Beatty his right of allocution. (*Id.* at 13.) Beatty stated that he was "very sorry for the pain and losses that have been brought to the victims, my family, my friends." (*Id.*) The district court provided the government with a chance to respond and the government stated:

Just very briefly, Your Honor. I would like to speak on behalf of the victims in this case. Obviously I don't represent them, but I am their only voice in court.

Mr. Short has on behalf of Mr. Beatty made a number of comments about the fact that [Beatty] used his loved ones' monies for his venture—as if that were proof of good faith. I believe it is more proof of the fact that he also took advantage of his loved ones. They obviously do not feel that way.

But many of the people who were taken advantage of by Mr. Beatty were his friends, former friends, and these are people who, for example, include a family who had saved money for college, and their son was unable to go to college because of Mr. Beatty, there are people who had received a [sic] inheritance, a woman who had worked a whole lifetime barely making a salary, finally receiving an inheritance, and it was all taken by Mr. Beatty and Mr. Van Slooten, there are other people who lost all their retirement funds.

On behalf of those people I would ask that a substantial sentence be imposed on Mr. Beatty.

(*Id.* at 14.) Beatty contends that the government breached the plea agreement not to "make a motion for upward departure" by asking the district court to impose a "substantial sentence."

A review of the record shows that the defendant failed to preserve the alleged error for review. No objection was made in the district court that the prosecutor's remarks violated the plea agreement. In a similar setting, we have held that a defendant's failure to object at the sentencing hearing waives any claim that the government violated the plea agreement by moving for an obstruction of justice adjustment. *United States v. Youmans,* 926 F.2d 747, 749 (8th Cir.1991); *see also United States v. Benson,* 836 F.2d 1133, 1135 (8th Cir.1988) ("complaints not brought to the attention of the district court at the time of the sentencing hearing are not preserved for review"). In the cases where we have found that the government violated the terms of a plea agreement by its prosecutor's remarks at sentencing time, a contemporaneous objection was either lodged with the trial court or it was raised by motion in the district court.

*See United States v. Van Horn,* 976 F.2d 1180, 1182–83 (8th Cir.1992) (contemporaneous objection); *United States v. McCray,* 849 F.2d 304, 305 (8th Cir.1988) (motion). We have also reviewed the prosecutor's remarks under a plain error standard and decline to grant relief.

## VI.

Accordingly, the district court's judgment sentencing the defendant to imprisonment of 41 months each on Counts 1 and 2 (concurrently) is affirmed.

HEANEY, Senior Circuit Judge, concurring and dissenting.

I concur in the court's opinion insofar as it holds that the PSR provided Beatty sufficient notice of the possibility of an upward departure and that the departure itself was not the product of double-counting. I find the other issues regarding the PSR and the government's breach of the plea agreement considerably more troubling than does the majority, however, and am therefore compelled to dissent.

## I

In 1983 the Judicial Council's Advisory Committee on Criminal Rules recommended amendments to Rule 32, including the addition of subdivision (c)(3)(D), which "requires the sentencing court, as to each matter controverted, either to make a finding as to the accuracy of the challenged factual proposition or to determine that no reliance will be placed on that proposition at the time of sentencing." Fed.R.Crim.P. 32(c)(3)(D) advisory committee's note to 1983 amendment. This "entirely new" provision was needed because both "the Bureau of Prisons and the Parole Commission made substantial use of the presentence investigation report" prior to the amendment. *Id.* That practice resulted

in reliance upon assertions of fact in the report in the making of critical determinations relating to custody or parole. For example, it is possible that the Bureau or Commission, in the course of reaching a decision on such matters as institution assignment, eligibility for programs, or computation of salient factors, will place great reliance upon factual assertions in the report which are in fact untrue and which remained unchallenged at the time of sentencing because defendant or his counsel deemed the error unimportant in the sentencing context (e.g., where the sentence was expected to conform to an earlier plea agreement, or where the judge said he would disregard certain controverted matter in setting the sentence).

The first sentence of new subdivision. (c)(3)(D) is intended to ensure that a record is made as to exactly what resolution occurred as to controverted matter.

*Id.*[1]

Our court, along with many other courts, has required "strict compliance" with Rule 32(c)(3)(D). *See United States v. Coleman,* 990 F.2d 419, 421–22 (8th Cir.1993); *United States v. Conkins,* 987 F.2d 564, 573 (9th Cir.1993); *United States v. Villasenor,* 977 F.2d 331, 339 (7th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1340, 122 L.Ed.2d 723 (1993); *United States v. Wilfred Am. Educ. Corp.,* 953 F.2d 717, 721 n. 7 (1st Cir.1992). Judge Phillips explained in *United States v. Daniel,* 3 F.3d 775 (4th Cir.1993), that "Rule 32(c)(3)(D)'s command is prophylactic in nature," and we will therefore "remedy any failure to comply with it, whether or not the district court actually resolved the issue and whether or not any identifiable harm was suffered...." *Id.* at 780.

Despite this understanding of the rule, the majority allows it to be twice breached.

---

1. The Advisory Committee also referred to its earlier discussion of the significance of the PSR in the Bureau of Prisons' determinations. For example, the Committee noted, "[i]f the defendant is incarcerated, the presentence report accompanies him to the correctional institution and provides background information for the Bureau of Prisons' classification summary, which, in turn, determines the defendant's classification within the facility, his ability to obtain furloughs, and the choice of treatment programs." Fed. R.Crim.P. 32(a)(1) advisory committee note to 1983 amendment (quoting Fennell & Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts,* 93 Harv.L.Rev. 1613, 1651 (1980)).

First, the court allows the statement that Beatty was a suspect in his co-conspirator's murder to remain in the PSR despite the sentencing court's failure either to take evidence on the issue or to indicate that it would not rely upon the statement. Second, the court holds the sentencing court's clear error—relying on the PSR as evidence in making findings over Beatty's objections—harmless because it does not appear to have affected the sentence. The latter determination is not ours to make, but even if it were, we would still be obligated to remand because of the effect the PSR has on Beatty's treatment by the Bureau of Prisons.

In ruling that the sentencing court need not "edit" the PSR to satisfy Beatty, the majority relies on our decision in *United States v. Johnson*, 767 F.2d 1259, 1276 (8th Cir.1985). There we held that a sentencing court "has no obligation ... to strike any material from the [PSR]. It need go no further than stating that a controverted matter will not be considered in sentencing."[2] Yet in this case, the sentencing court did not rule that it would disregard the information regarding Van Slooten's death—stating quite to the contrary that the court needed the

information in order to understand all of the circumstances stemming from the offense—nor did it make the necessary findings of the statement's accuracy.

The finding of harmless error is equally egregious. Whether a sentencing court's failure to comply with Rule 32(c)(3)(D) affects the sentence or not—a finding I am entirely unsure we are competent to make—misses the point. Rule 32 is, as Judge Phillips has indicated, "prophylactic in nature." We have required strict compliance with the rule "because of the great reliance placed on presentence investigation reports by courts and the Bureau of Prisons." *United States v. Garbett*, 867 F.2d 1132, 1136 (8th Cir.1989). As our court leaves this matter, the Bureau of Prisons will receive the sentencing court's findings that paragraphs 11, 12, and 18 of the PSR are accurate. The only basis for these findings was the PSR, and, as the majority notes, we have repeatedly held that the PSR cannot be treated as evidence when an objection is made. The majority's ruling undermines the rationale for the rule and disregards our previous statements on this issue. Under our existing case law, we are required to remand this case to the district court with

---

2. I do not agree that the district court is under no duty to delete irrelevant, potentially harmful information from the PSR, but such is the ruling of our court. I particularly question the validity of that ruling because it rests, as have other courts' rulings, on the availability of 28 C.F.R. § 2.19(c) to someone in Beatty's position. The problem with this answer is that this administrative proceeding exists under the auspices of the parole board, and given that parole was eliminated when the guidelines were implemented, the significant collateral effect of such erroneous material in PSRs is within the Bureau of Prisons.

This issue was set forth with great clarity in the University of Wisconsin Law Review:

A defendant who wishes to have his or her PSI corrected ... faces a procedural nightmare. At the sentencing hearing, the defendant can attempt to challenge information that is "irrelevant" to sentencing, but he or she will probably find the challenge dismissed upon the court's statement of nonreliance. If, however, the defendant does not raise the objection at sentencing, he or she may find that any later challenge has been waived. Meanwhile, the disputed information remains in the PSI. Attempts to correct PSIs after sentencing through direct appeals, "Rule 32 motions," Rule 35 motions, or section 2255 motions have more often than not been dismissed for lack of

jurisdiction. Courts have stated emphatically that the inmate should raise the issue with the Parole Commission, but the Parole Commission has stated just as emphatically that only the sentencing court has jurisdiction to correct a PSI; and in any case, the Parole Commission has no authority over defendants sentenced under the guidelines.

Keith A. Findley & Meredith J. Ross, Comment, *Access, Accuracy and Fairness: The Federal Presentence Investigation Report Under* Julian *and the Sentencing Guidelines*, 1989 Wis.L.Rev. 837, 878.

Findley and Ross suggest that Rule 32 should be amended to grant courts jurisdiction over "simple PSI correction motion[s]." This problem could be somewhat alleviated, particularly in cases such as the present one, if district courts would simply recognize the injustice of leaving erroneous material in the presentence report. If district courts are not so inclined, we certainly have it within our supervisory power to direct them to correct such errors. This could be but one way in which we as federal judges develop the "common law of sentencing" called for by Judge Becker. *See* Edward R. Becker, *Insuring Reliable Fact Finding in Guidelines Sentencing: Must the Guarantees of the Confrontation and Due Process Clauses Be Applied?*, 22 Cap. U.L.Rev. 1, 29 (1993).

directions that it strictly comply with the mandate of Rule 32(c)(3)(D).

## II

The majority also finds that Beatty, has failed to adequately preserve his allegation that the government violated its agreement not to move for an upward departure. The court's ruling rests on an examination of a fragment of the sentencing transcript. Having found no objection at the close of the government's remarks, the court rules that the issue was not preserved. This ruling ignores Beatty's earlier assertions on this point, assertions he could reasonably have felt it to be futile to repeat.

The sentencing transcript consists of only thirty-six pages, much of which is boilerplate. The statement by the government to which Beatty objects occurs on pages 13 and 14. By this point Beatty's counsel had already been informed by the sentencing judge that he intended to depart upward. Sent.Tr. at 3. Counsel responded with surprise:

> Your Honor, I have not addressed this matter in writing before because it was part of the plea agreement, that Ms. de la Vega and I entered into, that she would not make a motion for an upward departure—and of course I recognize the inherent power of the court to do so on its own—nevertheless, I have supplied extensive written materials to the court on just about every issue, save this one.

*Id.* at 3–4. Counsel then asked for a continuance to allow him to respond to this in writing. The court denied his request, finding both that the PSR provided adequate notice and that counsel had already addressed the relevant issues, though not in the context of an upward departure, and had "done an excellent job in setting those matters forth." *Id.* at 6.

Beatty's counsel then set forth his arguments against departure, and the court asked the government if it wished to respond. The government then set forth its litany regarding the victims of Beatty's crimes and closed by asking for a "substantial sentence." *Id.* at 14. Had this statement been made in a context other than in response to a request to comment on the issue of upward departure, it would not have been problematic. It is precisely because the statement was made in that context, however, that it constitutes a breach of the plea agreement. The government was obligated simply to respond that it had agreed not to seek an upward departure. It would have been permissible for it to add that it did not feel a departure was appropriate, had that been the case, though it would not have been obligated to do so. To say anything in favor of a departure would clearly breach the agreement.

I believe that Beatty did adequately preserve this issue for our review. Beatty had informed the court of the government's obligation under the plea agreement and yet the court asked the government to respond to its intention to impose an upward departure. It may be that the court would have imposed the same sentence regardless of what the government said, but there can be no question that the court knew of the government's agreement and yet it allowed the government to violate that agreement. I see no reason why, under these circumstances, we should not review this issue under the "clearly erroneous" standard rather than under plain error. I find clear error and would remand for resentencing in compliance with the plea agreement.

## III

There is no excuse for the district court's failure to comply with Rule 32(c)(3)(D) or to see that the plea agreement was enforced. In neither case is the burden an onerous one, and the potential harm to an inmate, particularly from failure to comply with Rule 32, is great. How we can hope for compliance with a prophylactic rule such as Rule 32 when we excuse noncompliance is beyond me, and I therefore dissent.