_____

No. 96-1038
_____

United States of America,      *
                          *
          Appellee,    *
                          * Appeal from the United States
   v.                     * District Court for the
                          * District of Nebraska
Lee Warn Scott,          *
                          *
          Appellant,    *

_____

Submitted: June 11, 1996

Filed: July 30, 1996
_____

Before Magill, Circuit Judge, HENLEY, Senior Circuit Judge, and
     DOTY,[*] District Judge.

_____

DOTY, District Judge.

     Lee Warn Scott ("Scott") was convicted of conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 846. He appeals his conviction and 20 year sentence. Finding no error, we affirm the judgments of the district court.[2]

## I.

     The grand jury returned a one-count indictment against Scott

_____

[*]The HONORABLE DAVID S. DOTY, United States District Judge
     for the District of Minnesota, sitting by designation.

[2]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

charging him with conspiracy to distribute crack cocaine "[f]rom an unknown date, but beginning at least as early as on or about June

30, 1994, and continuing until at least on or about September 21, 1994." At trial, three witnesses testified to their drug dealings with Scott. Harold Stewart testified that he first met Scott in Florida and agreed to travel with Scott and others to Mississippi to throw a barbecue, something Scott was known to do in Florida. After the barbecue in Mississippi, the group traveled to Lincoln, Nebraska, with the aid of another individual, Peter Mays, a "travel guide." The party arrived in Lincoln on a Monday sometime in late June 1994, and checked into a local motel.

On Wednesday of that week, Stewart learned that Scott had been storing crack cocaine in the hotel room that Stewart shared with Felton Milner. Stewart observed Scott cut the crack cocaine into distribution size "rocks" worth $50 a piece and give 25 rocks each to Mays and another individual, Roy Horton. Scott collected the sale proceeds from Horton and Mays the next morning. Stewart saw this activity repeated during the remainder of the week. That Saturday before returning to Florida, Stewart rode around Lincoln with Scott collecting drug proceeds from a number of individuals. Stewart said he did not distribute crack for Scott, but on one occasion he held money that was the proceeds of crack sales made by Milner that he (Stewart) later gave to Scott. That summer, Stewart returned to Nebraska from Florida with his own supply of crack cocaine and entered into competition with Scott.

Jimmy Simmons testified that Scott offered him crack to sell during the summer of 1994 in exchange for a cut of the profits. Simmons failed to sell this crack, instead he smoked his entire allotment and did not pay Scott. Simmons further testified that Scott threatened him with a knife because he didn't pay for the crack.

Scott provided crack to Christopher Gant for resale, according

-3-

to Gant's testimony at trial. Gant observed Scott and co-conspirator Edward Walker, a/k/a "Pokey," selling crack to at least three people on July 9, 1994, at 2410 Vine Street in Lincoln. Gant

stated that Scott was the money man while Walker actually distributed the crack that was kept in a white medicine bottle with a red cap.

The government also offered a video tape of surveillance, and the testimony of the officer who taped the surveillance, conducted at 2410 Vine Street on July 9, 1994. The tape depicts a number of individuals approaching the house on Vine and greeting Scott, who was standing by a brown car parked in the driveway of the house. Some of the parties would then greet Edward Walker. After awhile, individuals arriving at the house would enter the front door of the house followed by Scott, during which time Walker would stand in front of the door blocking any view from the street. The individuals would then exit the house after only one or two minutes and Scott would return to the front yard. After conducting approximately an hour of surveillance, officers contacted both Scott and Walker, eventually arresting both individuals after crack cocaine was discovered in a white medicine bottle with a red lid in the grass by the porch of the house.

Scott testified on his own behalf. He denied that he was a drug dealer and stated that he came to Lincoln to open a barbecue business. The large sums of cash that had been found on his person and in the freezer of his hotel room were the proceeds of his wife's back social security disability benefits given to him to start up his business and to enable his family to move from Florida to Nebraska.

The jury found Scott guilty. The district court, after an evidentiary hearing at which the trial transcript was admitted as evidence, found that Scott was responsible for at least 700 grams of crack cocaine for a base offense level of 36. Two points were added for obstruction of justice, four points for Scott's

leadership role in the conspiracy, and two points for using a dangerous weapon for a total base offense level of 44. Scott's

criminal history level was category II for a guideline sentence of life imprisonment. The district court departed downward upon the government's motion to 20 years because Scott had been advised at his arraignment that the maximum sentence was 20 years. Scott challenges his conviction and sentence.

## II.

### A.    Motion to Suppress

Scott first argues that the district court erred by failing to suppress evidence seized pursuant to his warrantless arrest on July 9, 1994, at 2410 Vine Street. "In determining whether probable cause exists to make a warrantless arrest, the court looks to the totality of the circumstances to see whether a prudent person would believe the individual had committed or was committing a crime." United States v. Hawkins, 59 F.3d 723, 727 (8th Cir. 1995) (quoting United States v. Segars, 31 F.3d 655, 659 (8th Cir. 1994) (internal citations omitted)). The historical facts supporting probable cause are reviewed for clear error, the determination of probable cause is subject to de novo review. Ornelas v. United States, 116 S. Ct. 1657, 1663 (1996) (resolving standard of review generally for reasonable suspicion and probable cause determinations); United States v. Snook, ___ F.3d ___, 1996 WL 368885 *4 n.3 (8th Cir. July 5, 1996) (citing Ornelas).

The district court adopted, without objection, the report and recommendation of Magistrate Judge Piester that concluded an "abundance" of probable cause supported the warrantless arrest of Scott on July 9, 1994. Reviewing the entire record, there can be no doubt that this determination is correct. Officers had information from two confidential informants that a black man driving a distinct vehicle was selling crack cocaine from 2410 Vine

-7-

Street.  One informant stated that this man was staying at a local motel.  Police officers observed the described vehicle at that hotel, then later at 2410 Vine Street.  An officer observed Scott

exit the vehicle at issue and engage in a number of brief exchanges consistent with the informant's description of how the crack sales were conducted at that residence and that were consistent with narcotic sales in general. Based on the correlation between the informants' information, the officers' observations and, considering all reasonable inferences, we agree a prudent person would believe that Scott was committing the crime of selling a controlled substance. Scott's arrest was supported by probable cause. The district court correctly denied Scott's motion to suppress.

## B. Sufficiency of the Evidence

Scott challenges the district court's denial of his Rule 29 motion, arguing that the evidence was insufficient to support his conviction on the charge of conspiracy. The standard of review of the sufficiency of the evidence is well-settled. We examine the evidence in the light most favorable to the verdict and accept all reasonable inferences as established, only reversing a verdict if no reasonable jury could have found the defendant guilty beyond a reasonable doubt on each essential element of the charge. United States v. Jenkins, 78 F.3d 1283, 1287 (8th Cir. 1996) (citations omitted). To prove a conspiracy, "the government must show an agreement between two people and that the agreement's objective was a violation of the law." United States v. Escobar, 50 F.3d 1414, 1419 (8th Cir. 1995).

Reviewing all of the evidence presented at trial, and considering it in the light most favorable to the verdict, we conclude that there is sufficient evidence to sustain Scott's conviction. The testimony showed an agreement between Scott and others, including Stewart, Simmons, Gant and Walker, to distribute crack cocaine. Scott testified to the contrary, and suggests that the other witnesses were wholly incredible, but it is for the jury

to judge the credibility of the witnesses.  Moreover, Scott's argument that the evidence at most establishes a buy-sell agreement between him and others ignores the repeated testimony that Scott

furnished a number of individuals with resale quantities of crack, expecting those individuals to provide him with the proceeds of these sales.  See United States v. Eneff, 79 F.3d 104, 105 (8th Cir. 1996).  A reasonable jury, relying on the testimony of Steward, Simmons and Gant, the videotape depicting the sales on July 9, as well as the crack and sums of cash seized, could find Scott guilty of each essential element of the crime of conspiracy.  Based on this evidence, we cannot agree that no reasonable jury could have found Scott guilty beyond all reasonable doubt.  The district court properly denied Scott's motion for judgment of acquittal.

## C.   Application of the Guidelines

Scott makes a number of challenges to his sentence.  First, Scott alleges that the district court improperly calculated the quantity of crack cocaine attributed to him when determining his base offense level.  Under the United States Sentencing Guidelines, a defendant's base offense level for drug-related crimes is calculated according to the quantity of drugs directly attributed to him and, in the case of jointly undertaken criminal activity, all reasonably foreseeable quantities that were in the scope of the criminal activity that he jointly undertook.  U.S.S.G. § 2D1.1; U.S.S.G. § 1B1.3, application note 2.  The sentencing court's quantity calculations are factual findings reviewed for clear error.  United States v. Flores, 73 F.3d 826, 833 (8th Cir. 1996), cert. denied, 1996 WL 282539 (U.S. June 24, 1996)).

The Presentence Investigation Report ("PSR") recommended that Scott be held accountable for at least 500 grams but less than 1.5 kilograms of crack for a base offense level of 36.  The probation officer's calculations were based on Stewart's trial testimony that Scott told him that he [Scott] had brought 10 ounces of crack to

Lincoln in June 1994, the 3.56 grams of crack seized on June 9, and Gant's testimony that Scott said he [Scott] was planning to "bring back half a key, kilos, or five kilos or something of that matter"

in July 1994 (which is at least 500 grams). Trial Transcript, Volume III, pg. 291 at ln. 9-10. The probation officer also noted that Gant, Simmons and Stewart had seen Scott in possession of crack at various times during the summer of 1994. The district court believed the probation officer's calculations were "conservative," but adopted them "as reasonable from the evidence adduced at trial." We agree that this drug quantity determination is well-supported by the trial record and is indeed a conservative indication of the large quantities of crack that Scott imported into Lincoln, Nebraska. Seeing no clear error, we uphold the district court's conclusion that Scott should be held accountable for at least 500 grams but less than 1.5 kilograms of crack.

Whether the district court complied with Federal Rule of Criminal Procedure 32(c)(1), however, presents a closer question. Rule 32 requires the district court to make specific findings as to each controverted matter in the PSR or determine that no finding is necessary because the matter will not be taken into account at sentencing. Such findings ensure "meaningful appellate review and the fairness of the sentencing process." United States v. Beatty, 9 F.3d 686, 690 (8th Cir. 1993) (citations omitted). This circuit has stated that "the requirements of this rule [are] satisfied where the district court made clear at sentencing that it was relying on its impressions of the testimony of witnesses at trial, coupled with its specific rejection of the defendant's quantity objections." United States v. Flores, 73 F.3d 826, 835 (8th Cir. 1996) (citing United States v. Edward, 994 F.2d 417, 423 (8th Cir. 1993), cert. denied, 114 S. Ct. 701 (1994)). We acknowledge that the district court satisfied these minimal requirements by the issuances of its written memorandum that rejected all of Scott's sentencing objections, including his position that he should only be held accountable for the 3.56 grams of crack seized, having previously concluded that the PSR was "correct in all respects."

<u>See</u> Memorandum and Order dated December 15, 1995, at pg. 1;
Tentative Findings Order dated June 1, 1995, pg. 1.  Further, the

district court, in agreeing with the probation officer's calculations, expressly stated its reliance on the testimony presented at trial.

However, the value of specific references to trial testimony, the substance of that testimony and whether it is credible cannot be understated. Such specificity is very important in the area of drug quantity calculations where the findings turn on the credibility determinations of the trial judge, and where as here, the testimony presented is the word of one or two individuals. Because we find that the district court satisfied the minimum requirements of Rule 32 as established by this circuit, and because the record clearly shows that the drug quantity is well-supported, we reject Scott's challenge to his sentence on this basis.

Scott next argues that the district court incorrectly calculated his criminal history score by assessing one point each for his two previous convictions for aggravated battery and one conviction for aggravated assault. Scott was sentenced to a fine ranging from $250 to $500 on each conviction. Section 4A1.1(c) provides that one point shall be added for each "prior sentence" not otherwise counted under § 4A1.1(a) or (b). A "prior sentence" is defined as "any sentence previously imposed upon adjudication of guilt." U.S.S.G. § 4A1.2(a)(1). From the plain language of the guidelines, non-imprisonment sentences, such as the imposition of a fine only, are counted as a prior sentence unless the crime is a misdemeanor or other petty offense that is similar to the excluded offenses listed in § 4A1.2(c)(1). Scott's crimes of aggravated assault or battery are not excluded crimes. Scott simply misconstrues the guidelines in arguing that points can only be assessed if he is sentenced to a term of imprisonment. The district court properly assessed one point each for the non-imprisonment sentences that Scott received for his convictions.

The district court also enhanced Scott's base offense level by

two points for obstruction of justice, two points for possessing a dangerous weapon and four points for Scott's role as a leader and organizer of others. We review the factual findings supporting each enhancement for clear error. United States v. Adipietro, 983 F.2d 1468, 1479 (8th Cir. 1993) (obstruction of justice); United States v. Garrido, 995 F.2d 808, 815 (8th Cir.), cert. denied, 114 S. Ct. 330 (1993) (dangerous weapon); United States v. Pena, 67 F.3d 153, 156-57 (8th Cir. 1995) (role in the offense).

Lying under oath certainly impedes the administration of justice during the prosecution of a case. U.S.S.G. § 3C1.1, application note 3(b). A defendant is subject to an obstruction of justice enhancement if he gives false testimony under oath in regard to a material matter and does so willfully rather than out of confusion or mistake. United States v. Dunnigan, 507 U.S. 87 (1993). A defendant's testimony should be evaluated in the light most favorable to him. Applying this heightened standard, the district court concluded that "Scott's testimony under oath clearly constitutes perjury both as to the money in his possession when he arrived in Lincoln, Nebraska, and as to his involvement in the sale of crack cocaine." Memorandum and Order dated December 15, 1995, at pg. 2. Scott's testimony concerned a material matter and nothing suggests that it was given out of confusion or mistake. The district court's finding is supported by a review of the record as a whole and will not be set aside.

The Guidelines provide that a defendant's base offense level for a drug-related crime must be increased if the defendant possessed a dangerous weapon. U.S.S.G. § 2D1.1(b)(1). Dangerous weapon means "an instrument capable of inflicting death or serious bodily injury." U.S.S.G. § 1B1.1, application note 1(d). This enhancement is not limited to the possession of a firearm and should be applied unless it is clearly improbable that the weapon

was connected to the offense.  U.S.S.G. § 2D1.1, application note 3.  Scott's challenge to this enhancement hinges on the fact that

the knife was not produced at trial. Because the knife was neither produced at trial nor described at trial, Scott submits there is no evidence that the knife was "dangerous," i.e., capable of inflicting at least serious bodily injury. Scott, however, has provided no authority for the proposition that the knife must be produced. Simmons testified at trial that Scott threatened him with a knife because he smoked up the crack that Scott gave him to sell and did not pay for the drugs. Trial Transcript, Volume II, pg. 141-142. Simmons felt threatened by this conduct. Id. at 142, ln. 14-16. This testimony, which the district court credited, is sufficient to find by a preponderance of the evidence that Scott did indeed possess a dangerous weapon, a knife, in connection with his criminal conduct.

Scott also challenges his four level enhancement for his aggravated role in the conspiracy. Scott's arguments are without merit. The evidence showed that Scott recruited a number of individuals including Simmons, Mays, Gant, Stewart, Milner and Horton, at a minimum, to sell drugs for him. The district court correctly determined that this recruitment of accomplices, Scott's supervision of their sales and the retention of a large share of the profits warrants the maximum enhancement for his leadership role in a conspiracy involving five or more participants. See U.S.S.G. § 3B1.1, application n. 4.

Finally, Scott's arguments regarding the disparity in punishment between cocaine base and cocaine powder, the application of the rule of lenity and his equal protection challenge arising therefrom are foreclosed by this circuit's clear precedent. United States v. Long, 77 F.3d 1060, 1061-62 (8th Cir. 1996) (citing United States v. Jackson, 64 F.3d 1213 (8th Cir. 1995), cert. denied, 116 S. Ct. 966 (1996)). The court has considered Scott's remaining arguments in support of his appeal and finds them to be

-19-

without merit.

**III.**

Based on the foregoing, we uphold the judgments of the district court. Probable cause supported Scott's arrest on July 9, 1994, sufficient evidence supported his conviction on the conspiracy charge and the district court properly calculated his offense level and criminal history score. We must note that based on its calculations, the district court found Scott's offense level to be 44, and his criminal history to be category II for a resulting guideline sentence of life in prison. Notwithstanding this fact, the district court departed downward on the motion of the government pursuant to U.S.S.G. § 5G1.1(a) to 20 years imprisonment. The district court was well within its discretion to do so. Scott's conviction and sentence are affirmed.

A true copy.


Attest:


Clerk, U.S. Court of Appeals, Eighth Circuit.