_____

No. 96-1071
_____

United States of America,         *
                                  *
          Appellee,               *     Appeal from the United States
                                  *     District Court for the
     v.                           *     District of Minnesota.
                                  *
Richard John Garin, Jr.,          *
                                  *
          Appellant.              *

_____

          Submitted:  October 24, 1996

            Filed:  December 24, 1996
_____

Before WOLLMAN, FLOYD R. GIBSON, and BEAM, Circuit Judges.
_____


WOLLMAN, Circuit Judge.


     Richard John Garin appeals from his conviction on several drug
charges and the resulting sentence imposed by the district court.[1]
We affirm.


                              **I.**


     Garin's arrest was preceded by the following events.  Jeff
Koutek was arrested on April 27, 1994, when a search of his
residence, vehicle, and "stash house" produced 371 grams of
methamphetamine.  Koutek told law enforcement officers that Garin
was his methamphetamine supplier.  On April 29, 1994, Koutek made
a telephone call to Garin, which was recorded.  Koutek informed
Garin that he and Trevor Dawley had been arrested.  Garin responded
by telling Koutek that he and Dawley would be taken care of so long

_____

     [1]The Honorable David S. Doty, United States District Judge for
the District of Minnesota.

as they did not implicate Garin.

On information from Koutek, agents searched the home of Barb Ferry on June 29, 1994. The search yielded drugs and drug paraphernalia. Ferry informed law enforcement officers that Garin and Wesley Schindler were her sources of supply.

Ferry agreed to make a controlled purchase of three ounces of methamphetamine from Garin and Schindler. On July 1, 1994, she went to the restaurant where the sale was to take place. Garin and Schindler pulled into the parking lot together, Garin on one motorcycle and Schindler on another. While Garin waited at the opposite end of the lot, Ferry and Schindler entered Ferry's vehicle, where Ferry purchased three ounces of methamphetamine from Schindler.

Garin was arrested and charged with conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846, distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and aiding and abetting possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(2) and 18 U.S.C. § 2.

Garin's testimony at trial that he had never distributed methamphetamine was contradicted by four witnesses. Jeff Koutek testified that he began selling methamphetamine for Garin in the fall of 1993. He initially sold about two ounces per week, but was selling approximately a pound per week by April of 1994. Trevor Dawley testified that he helped Garin and Koutek distribute methamphetamine, that Koutek received up to a pound of the drug at a time from Garin, and that on one occasion he and Koutek had helped Garin weigh and package approximately five pounds of methamphetamine. Ferry testified that she sold approximately one to two ounces of methamphetamine each week for Garin from the fall of 1993 through June of 1994, and that she observed Koutek receive

-2-

up to a pound of methamphetamine at a time from Garin.  Barbara Burckhardt testified that she knew Garin distributed to Ferry and Koutek, that she saw Garin break up about five large bags of methamphetamine in April of 1994, and that she had helped Garin conceal a large quantity of the drug in April or May of 1994.  She also testified that after Koutek telephoned Garin and informed Garin that he had been arrested, Garin became nervous and asked Burckhardt to store approximately four pounds of methamphetamine and $15,000 in cash for him.  Burckhardt did so, and then returned portions of the stash to Garin over the following month and a half.

The jury convicted Garin on all counts, and he was sentenced to 360 months' imprisonment.  Garin appeals his sentence.  He also challenges his conviction, contending that the evidence was insufficient to establish his guilt beyond a reasonable doubt.[2]

## II.

In determining Garin's base offense level, the district court found Garin accountable for sixteen pounds of methamphetamine based on the testimony of Koutek Dawley, Ferry, and Burckhardt and on the 308.29 grams of actual methamphetamine[3] recovered from Koutek and Ferry.  Garin asserts that the district court erred in attributing the sixteen pounds of methamphetamine to him, alleging that the witnesses on which the district court relied were unreliable and untrustworthy.

---

[2]In his brief, Garin also asserted that being subjected to both criminal punishment and forfeiture of his motorcycle constituted double jeopardy.  Garin's attorney conceded at oral argument, however, that this contention cannot prevail in light of the Supreme Court's decision in United States v. Ursery, 116 S. Ct. 2135 (1996), that in rem forfeiture does not constitute punishment for double jeopardy purposes.  Id. at 2149.

[3]Actual methamphetamine is "the weight of the controlled substance, itself, contained in the mixture or substance." U.S.S.G. § 2D1.1(c), note B.

The quantity of drugs attributed to a defendant for sentencing purposes must be proved by a preponderance of the evidence and is a question of fact that we review for clear error. United States v. Byler, 98 F.3d 391, 394 (8th Cir. 1996); United States v. Scott, 91 F.3d 1058, 1062 (8th Cir. 1996).

The district court reviewed the testimony of the four witnesses and found it to be "accurate, reliable, and . . . supported by the great weight of evidence presented at trial." The court also found that the recorded telephone call between Garin and Koutek corroborated the witnesses' testimony. The district court further stated it was convinced that Garin was the leader of the conspiracy and thus accountable for the methamphetamine to which the witnesses testified. Given the district court's careful assessment of the credibility of the co-conspirators, we find no clear error in its determination of the quantity of methamphetamine attributable to Garin.[4]

Garin next contends that the district court erred in enhancing his sentence for obstruction of justice. A district court's enhancement for obstruction of justice is a factual finding that we review for clear error. Scott, 91 F.3d at 1063. Properly considering the evidence in the light most favorable to Garin, see id., the district court specifically and independently found that Garin committed perjury at trial "by denying any involvement in the drug conspiracy," and by asking Burckhardt to lie to the grand jury for him. We "give due regard to the district court's observations

---

[4]Garin also contends that the district court erred in attributing to him the 308.29 grams of actual methamphetamine. Garin argues that because the defense's tests of four packets show purity levels at least ten percent lower than the tests of the government's chemist, the court erred in adopting the conclusions of the government's chemist. We need not address this argument, however, for as the district court pointed out, either amount of actual methamphetamine, when added to the additional sixteen pounds of methamphetamine, results in a base offense level of 36.

-4-

and express finding that a defendant lied to the jury." United States v. McCormick, 29 F.3d 352, 357 (8th Cir. 1994). The district court's finding that Garin lied to the jury and persuaded another to do so is amply supported by the record, and its assessment of an obstruction of justice enhancement is not clearly erroneous.

Garin next asserts that the district court erred in finding that his leadership role warranted a four-level enhancement, a finding that we review for clear error. Scott, 91 F.3d at 1063. To warrant a four-level leadership role enhancement, the evidence must show that "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a); see Scott, 91 F.3d at 1064. Factors to consider include "the exercise of decision making authority . . . the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, comment. (n.4).

The district court found that the evidence at trial sufficiently established that the defendant "organized and led the conspiracy to distribute methamphetamine." He "supplied large amounts of methamphetamine to others for distribution," and reaped profits from the conspiracy . . . acquir[ing] relative wealth and property from his illegal conduct." The district court also found that the "scope of the conspiracy was large in terms of the amount of money and methamphetamine involved." We conclude that these findings are supported by the record and that the district court did not clearly err in assessing Garin a section 3B1.1(a) enhancement for his leadership role in the offense.

Garin also argues that the district court erred in calculating his criminal history. On June 21, 1991, Garin was sentenced to

"sixty days . . . with credit for time served of two days."  A prior sixty-day sentence qualifies a defendant for two criminal history points.  <u>See</u> U.S.S.G. § 4A1.1(b).  Garin argues that his prior sentence was for 58 days since he received two days' credit and thus should have counted for only one point.  <u>See</u> U.S.S.G. § 4A1.1(c).  The relevant length of imprisonment, however, is the maximum imposed.  <u>See</u> U.S.S.G. 4A1.2(b)(1).  We agree with the district court that Garin's prior sentence of imprisonment was for sixty days and thus find no error in its assessment of criminal history points.

### III.

We reject as without merit Garin's contentions that the district court should have departed downward under section 5K2.0 of the Sentencing Guidelines on the grounds that the 10:1 ratio between methamphetamine of unknown purity and actual methamphetamine prescribed in the Guidelines is irrational and because sentencing entrapment occurred.  Likewise without merit is Garin's contention that the evidence was insufficient to support the conviction.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.