# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-1053

———————

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Southern District of Iowa. |
| Terry Allen Garnette, | * |
| | * |
| Appellant. | * |

———————

Submitted: September 26, 2006
Filed: January 10, 2007 (corrected 1/12/07)

———————

Before WOLLMAN, BRIGHT, and BOWMAN, Circuit Judges.

———————

BOWMAN, Circuit Judge.

Terry Allen Garnette pleaded guilty to one count of producing child pornography in violation of 18 U.S.C. § 2251(a) and one count of distributing child pornography in violation of 18 U.S.C. § 2252(a)(2). The District Court[1] calculated Garnette's advisory sentencing guidelines range as 180 to 210 months' imprisonment, but sentenced Garnette to 255 months' imprisonment. Garnette appeals his sentence. We affirm.

———————

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

I.

We set forth the facts as stated in the Presentence Investigation Report (PSR). Garnette did not object to the PSR, and the District Court found the facts as stated therein. See United States v. Beatty, 9 F.3d 686, 690 (8th Cir. 1993) (ruling that a district court may accept as true all factual allegations in a PSR not objected to by the parties).

Garnette was arrested on June 28, 2004, after his live-in girlfriend, Christina,[2] discovered images of child pornography on Garnette's home computer and contacted police. Several of the images were of Christina's four-year-old daughter, Dusty, sitting on Garnette's lap with her underwear either removed or pulled to the side so that her genitals were exposed. Dusty had come to live with Christina and Garnette in April 2004. At that time, Christina was being treated for ruptured ovarian cysts and taking medication that caused drowsiness. Garnette used Christina's illness to his advantage, taking the pornographic pictures of Dusty while Christina was napping. Christina's suspicions about Garnette's sexual interests were raised in May 2004 when Garnette told her that he was sexually aroused by young girls. Christina also became aware that Garnette was using the internet to trade images of adult women who were dressed to appear younger. When Dusty began acting differently toward Garnette, Christina surreptitiously searched Garnette's computer while he was at work.

In addition to finding the pornographic pictures of Dusty on the computer, Christina found email messages that Garnette had written and received discussing trading Dusty for another child. Christina told police that Garnette had posted an advertisement on the internet "indicating that he had a female toddler under the age of five which he wanted to trade for an older child." PSR ¶ 19. Responses to the

_____

[2]To protect the privacy of Garnette's victims, we will use only their first names.

advertisement came from the United States and seven other countries. Christina saw at least one response that "discussed purchasing Dusty rather than trading her." Id.

After he was arrested and read his rights, Garnette agreed to cooperate with the police. He informed them that he had been spending a couple of hours a day on his computer looking at child pornography and conversing with others about sex. Garnette admitted downloading hundreds of images of child pornography and trading images of child pornography with individuals in the United States, Holland, England, New Zealand, and the Phillippines. Garnette acknowledged that he had developed a specific interest in bondage, sadism, and masochism, and that he had engaged in such practices with consenting adult women. Garnette stated that he took the pictures of Dusty to fulfill part of a fantasy. He confessed to taking four to six pictures of Dusty when changing her underwear.

A search of Garnette's computer revealed hundreds of images of adult and child pornography. A significant amount of the images contained themes of bondage and sadism. For example, Garnette had collected a number of images from a known perpetrator called "Husker Fan." The images show Husker Fan abusing his seven-year-old step-daughter and depict bondage, sadism, anal rape, vaginal rape, anal and vaginal rape with foreign objects, and the perpetrator standing over the naked girl with the words "cut me," "slut," and "hurt me" written on her chest and abdomen. The computer also contained at least thirteen video clips involving child pornography. These included a series of video clips involving a four-year-old girl who is a known victim from Texas commonly referred to as "Baby J." In the Baby J. series, Baby J. is shown struggling and crying while an adult male penetrates her both anally and vaginally and ejaculates into her mouth. Baby J. is bound and sometimes blindfolded in the videos.

Prior to sentencing, Garnette voluntarily submitted to a psychosexual evaluation by Jason Smith, Psy.D. Garnette told Dr. Smith that he had been viewing pornography on the internet for the past three or four years, and child pornography on

the internet for the past two years. Garnette indicated that he was initially only curious about child pornography, but as time went on, child pornography became more of his focus and he began masturbating after viewing the images. Garnette said that he fantasized about having sex with young girls. Garnette "feels that he is sexually obsessed." PSR Attachment: Psychosexual Evaluation at 5. Garnette believes that "it is everyone's right to have sex and that children try to sexually provoke adults." Id. He indicated that he "was glad he was caught because he knew it would have gotten worse." PSR ¶ 29. Dr. Smith diagnosed Garnette with pedophilia and found that Garnette demonstrated a significant set of research-supported risk factors that place him at medium risk for re-committing a sexually deviant offense. According to Dr. Smith, after Garnette is released from prison there is a 25% likelihood that he will re-offend within five years and a 37% likelihood that he will re-offend within ten years. Garnette's test results further suggest that "he has attributes and behaviors highly similar to those [of] known sex offenders and the condition of sex deviance may be a component of his personality make-up." PSR Attachment: Psychosexual Evaluation at 10.

The District Court calculated Garnette's guidelines sentencing range as 168 to 210 months, but noted that the statutory mandatory minimum sentence was 180 months, effectively making the sentencing range 180 to 210 months. Garnette filed a sentencing memorandum requesting a downward departure or variance from the guidelines sentencing range based on his history of sexual abuse as a child, his "super" acceptance of responsibility, and his vulnerability to victimization in prison. Appellant's Br. at 4. The government requested the statutory maximum sentence of 360 months. The District Court denied Garnette's request for a downward departure or variance. The court then considered each of the 18 U.S.C. § 3553(a) factors and sentenced Garnette to 255 months, "the midway point between the top of the guideline range and the statutory maximum." Sentencing Tr. at 33. The sentence represents a 21% upward variance from the guidelines range.

-4-

## II.

Garnette's first argument is that his sentence is unreasonable in violation of United States v. Booker, 543 U.S. 220 (2005). Specifically, Garnette contends that the reasons given by the District Court for imposing a sentence above the guidelines range were already taken into account by the guidelines themselves. "When the district court has correctly determined the guidelines sentencing range, as in this case, we review the resulting sentence for reasonableness" under the abuse of discretion standard. United States v. Gatewood, 438 F.3d 894, 896 (8th Cir. 2006). A sentence within the guidelines range is presumed reasonable, while a sentence that falls outside the guidelines range is reasonable only if the district court offers appropriate justification for the sentence under the factors identified in 18 U.S.C. § 3553(a). Id. When a district court varies from the guidelines range based upon its application of § 3553(a), we consider both whether the district court's decision to grant a variance is reasonable and whether the extent of the variance is reasonable. United States v. Mashek, 406 F.3d 1012, 1017 (8th Cir. 2005). "A sentence may be unreasonable if the district court failed to consider a relevant factor that should have received significant weight, gave significant weight to an improper or irrelevant factor, or considered only appropriate factors but committed a clear error of judgment by imposing a sentence that lies outside the limited range of choice dictated by the facts." United States v. Larrabee, 436 F.3d 890, 892 (8th Cir. 2006).

While the District Court imposed a sentence outside the presumptively reasonable guidelines sentencing range, the District Court's careful application of the § 3553(a) factors and stated justification for the upward variance convince us that the District Court did not exceed the permissible bounds of its discretion and, therefore, the sentence is reasonable.[3]

---

[3]The District Court set forth its reasons for the upward variance at the sentencing hearing and in a sealed "Statement of Reasons" form attached to the judgment.

In imposing the sentence, the District Court first considered the "history and characteristics of the defendant" under § 3553(a)(1). The court noted that Garnette had been "a long time actor in this underground." Sentencing Tr. at 31. As discussed above, Garnette admitted viewing child pornography for approximately two years prior to his arrest. He told police that he has a specific interest in bondage, sadism, and masochism, and that he was spending several hours each day viewing child pornography and discussing sex with others over the internet. Garnette's child-pornography trading network was extensive; he interacted with individuals from the United States, Holland, England, New Zealand, and the Phillippines. The District Court did not abuse its discretion in considering Garnette's ongoing history of viewing, downloading, and trading deviant pornography.

Second, the District Court considered § 3553(a)(2)(A) and stated that "only a severe sentence" could account for the seriousness of Garnette's offense conduct, promote respect for the law, and provide just punishment for the offense. Sentencing Tr. at 31. With regard to count one (production), the District Court sought to account for the fact that Dusty was only four years old at the time she was exploited by Garnette. Garnette argues that Dusty's age was already accounted for by the guidelines and that the District Court was therefore unreasonable in considering it when imposing an upward variance. We disagree. While § 2G2.1(b)(1) of the guidelines provides for a two-level enhancement when the victim is between the ages of sixteen years and twelve years, and a four-level enhancement (which Garnette received) when the victim is under the age of twelve years, the guidelines provide no further age-based enhancements for victims significantly younger than twelve years. The § 2G2.1(b)(1) adjustment for victims under twelve years does not account for the particularly vulnerable state that Dusty was in, given her age at the time of the abuse. At four years old, Dusty was not able to stop Garnette from holding her on his lap and exposing her genitalia, nor was she able to fully articulate Garnette's actions towards her. The degree of helplessness faced by Dusty was far greater than would be faced by an older child, and it was not erroneous for the District Court to consider the

especially young age of the victim in considering the nature of Garnette's offense. Moreover, in addition to accounting for Dusty's age, the District Court found that a longer sentence was necessary to adequately address and punish Garnette's attempt to trade or sell Dusty for an older child. Garnette does not address the court's consideration of this particularly egregious conduct in imposing the § 3553(a) variance.

With regard to count two (distribution), the District Court remarked that a long sentence was necessary to adequately address and punish the heinous level of sadism involved in the images and videos of child pornography found on Garnette's computer. While § 2G2.2(b)(3) of the guidelines provides for a four-level enhancement (which Garnette received) when the material distributed portrays sadistic or masochistic conduct, the probation officer who prepared the PSR stated that "[t]he images and video clips the defendant possessed involved levels of sadism and cruelty far beyond what this Probation Officer typically witnesses in reviewing the discovery materials and applying the enhancement for § 2G2.2(b)(3)." PSR ¶ 144. Given the extraordinary nature of the material involved in this case, the District Court did not abuse its discretion by considering the degree of heinousness as part of its § 3553(a) analysis.

Third, the District Court determined that the upward variance was necessary to protect the public. Applying § 3553(a)(2)(B), the District Court stated that a longer sentence would deter the criminal conduct of others, at least in theory. And applying § 3553(a)(2)(C), the court stated that the longer Garnette was incarcerated, the longer the public would be protected from additional crimes that he might commit. The District Court specifically noted that Garnette was a diagnosed pedophile with a medium-risk of re-conviction. The District Court was also concerned by Garnette's admission that he would have committed worse offenses had he not been arrested. The District Court did not abuse its discretion in making these determinations.

Finally, applying § 3553(a)(2)(D), the District Court found that the 255-month sentence would permit Garnette to receive both psycho-sexual and substance-abuse treatment. The District Court recommended that Garnette serve his sentence at the Federal Correctional Institute in Butner, North Carolina, where both types of treatment are available.[4]

We conclude that the reasons given by the District Court were appropriate and sufficient to justify the upward variance. We find the 255-month sentence reasonable in light of the extraordinary facts of this case.[5]

---

[4]Garnette also asserts that the District Court varied from the guidelines sentencing range based on the fact that Garnette distributed "pedophilia pornography." Appellant's Br. at 11. Our review of the sentencing transcript, however, reveals that the District Court simply used the term "pedophilia pornography" in describing the circumstances of Garnette's offense, not in explaining its reasons for the § 3553(a) variance. Sentencing Tr. at 31.

[5]While Garnette argues that his sentence is "disproportionately higher than other sentences in cases very similar to his," Appellant's Br. at 12, he has not cited (and we have not found) any other case involving circumstances similar to those here—such as the unprosecuted attempt to sell a young child for sexual purposes. We note that, under 18 U.S.C. § 2251A, any person having custody or control of a minor who offers to sell the minor with the knowledge that, as a consequence of the sale, the minor will be the subject of child pornography is subject to a thirty-year minimum sentence. Moreover, Garnette's sentence is lower than the 270-month sentence (a 50% increase from the guidelines sentence) recently upheld in United States v. Meyer, 452 F.3d 998, 999-1000 (8th Cir. 2006) (involving the use of a child to produce sexually explicit material).

III.

Garnette next argues that the District Court erroneously concluded that it had no authority to consider the fact that Garnette endured extraordinary sexual abuse as a child. Garnette asserts that the District Court should have considered his personal history of abuse and either granted a downward departure from the guidelines pursuant to guidelines § 5K2.13 (diminished capacity of the defendant) or decreased his sentence pursuant to the factors in 18 U.S.C. § 3553(a).

We find no merit to Garnette's argument that the District Court was unaware of its authority to grant a departure or a variance on this basis. At the sentencing hearing, the District Court stated,

> I have considered the defendant's arguments made in the sentencing memorandum, and while in certain types of cases extraordinary abuse as a child might be a basis for making a downward departure, I am not at all satisfied that it works in a case like this. I think what happened to him as a child no doubt was a contributing factor, if not the primary factor, in bringing about his own conduct as an adult; but that cannot justify a lower sentence in my opinion than is otherwise appropriate.

Sentencing Tr. at 30. This commentary convinces us that the District Court recognized that it was not foreclosed from considering Garnette's childhood experiences when imposing his sentence.[6] Indeed, the court specifically noted that

---

[6]Although Garnette's sentencing motion requested either a downward departure pursuant to guidelines § 5K2.13 *or* a downward variance pursuant to 18 U.S.C. § 3553(a), the District Court only used the term "downward departure" in its ruling. It is clear from the record, however, that the District Court also considered—and denied—Garnette's request for a downward variance. Immediately prior to ruling, the District Court noted that it "considered the defendant's arguments made in his sentencing memorandum." Sentencing Tr. at 30. In addition, the sentence imposed indicates that the District Court was not inclined to vary downward in sentencing

-9-

"extraordinary abuse of as a child might be a basis for making a downward departure." Id. The District Court also went on to discuss—and factually distinguish—two cases that recognized a downward departure might be appropriate when a defendant has suffered exceptional abuse as a child. Nevertheless, the court concluded that, in its "opinion" (a term indicating that the court was exercising discretion), Garnette's past abuse did not "justify" a reduced sentence. Id. The court thus acknowledged that a downward departure or variance was available in an appropriate case, but found that it was not justified in this case. When a district court recognizes that it has the discretionary authority to depart downward, its "decision not to depart downward is unreviewable." United States v. Frokjer, 415 F.3d 865, 875 (8th Cir. 2005).

IV.

For the foregoing reasons, the judgment of the District Court is affirmed.

_____

---

Garnette. As we held above, Garnette's 255-month sentence was reasonable under § 3553(a).

-10-